UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RSL COMMUNICATIONS PLC, by
Michael John Andrew Jervis and Steven Anthony
Pearson, as the Joint Administrators,

                    Plaintiff,

        -v-

NESSIM BILDIRICI, PAUL DOMORSKI, ITZHAK
FISHER, RONALD S. LAUDER, STEVEN
SCHIFFMAN, JACOB SCHUSTER and EUGENE
SEKULOW,

                    Defendants.

---

Case No. 04-CV-5217 (KMK)

OPINION AND ORDER

Appearances:

John H. Bae, Esq.
Ingrid Mara Bagby, Esq.
Cadwalader, Wickersham & Taft LLP
New York, NY
*Counsel for Plaintiff*

John S. Kiernan, Esq.
Emily O. Slater, Esq.
Debevoise & Plimpton, LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff RSL Communications, Plc. ("RSL Plc") brings this action against the former

members of its board of directors, alleging that they breached their fiduciary duties to RSL Plc

itself, as well as to RSL Plc's creditors, during the decline of the international

telecommunications market at the turn of the millennium.  Defendants move to dismiss on the

grounds that they did not breach their fiduciary duties, or, in the alternative, that any alleged

breach was not the cause of the damages Plaintiff incurred.  For the reasons set forth below,

Defendants' Motion is DENIED.

## I.  Background

### A.  Factual History

For the purposes of deciding this motion, the following facts alleged in the Complaint are

taken as true.  In 1994, Defendants Ronald S. Lauder and Itzhak Fisher founded RSL

Communications, Ltd. ("RSL Ltd"), a multinational telecommunications corporation.  (Compl.

¶ 23)  RSL Ltd was the parent company for a group of subsidiaries operating in the

telecommunications industry ("RSL Group").  (*Id.* ¶ 23)  At its peak, RSL Group provided voice,

mobile, data/internet, and value-added services to small and mid-sized businesses and residential

customers in twenty-two countries.  (*Id.* ¶ 23)

Plaintiff RSL Plc was a non-operating finance subsidiary of RSL Ltd, formed in 1996 in

the United Kingdom under the English Companies Act of 1985.  (*Id.* ¶ 24)  RSL Plc was to be

the named borrower for note financings, the proceeds of which would be distributed to the other

subsidiaries within RSL Group.  (*Id.* ¶ 25)  RSL Plc also acted as an intermediate, passive

holding company between RSL Ltd and the rest of RSL Group, and was itself the holding

company for the RSL Group's European subsidiaries.  (*Id.* ¶ 25)  Although RSL Plc was a British

corporation, all decisions regarding RSL Plc were made by RSL Ltd executives and directors in

RSL Ltd's New York City offices.  (*Id.* ¶¶ 13, 24, 27)

From 1996 to February 2000, RSL Plc raised $1.4 billion of public debt through nine

series of senior bond issues.  (*Id.* ¶ 26)  These bonds were issued out of New York under

indentures governed by New York law.  (*Id.* ¶ 27)  On February 22, 2000, the last of these bonds

was issued, including $100 million and €100 million in 12 and 7/8 percent (12.875%) senior notes due in 2010 ("February 2000 Bonds").  (*Id.* ¶ 26)  These February 2000 Bonds were guaranteed by RSL Ltd and RSL COM U.S.A., Inc. (RSL USA), the United States operating subsidiary of RSL Group and an indirect subsidiary of both RSL Plc and RSL Ltd.  (*Id.* ¶ 26)  RSL Ltd and RSL USA also retroactively guaranteed RSL Plc's other issued bonds in February 2000.  (*Id.* ¶ 27)

At the end of the first quarter of 2000, RSL Ltd had approximately $310 million in available cash.  (*Id.* ¶ 36)  In March 2000, RSL Ltd formulated a business plan in which it would obtain additional funding through an initial public offering ("IPO") of the Group's Australian subsidiary and through the sale of shares in another subsidiary.  (*Id.* ¶ 32)  However, only two months later, in May 2000, RSL Group cancelled the planned IPO of the Australian subsidiary, causing the Group to forego $200 million in anticipated funding.  (*Id.* ¶ 38)  In June 2000, Goldman Sachs warned RSL Ltd that RSL Group would run out of cash by November 2000 if additional funds were not obtained.  (*Id.* ¶ 40)  In July 2000, Defendant Lauder provided a further unsecured $100 million line of credit to RSL Plc, guaranteed by RSL Ltd, and approved by the RSL Ltd Board.  (*Id.* ¶ 44)  RSL Plc's Board did not hold a formal meeting to approve the undertaking of the Lauder loan.  (*Id.* ¶ 45)  In August 2000, RSL Plc drew down $25 million from the Lauder loan.  (*Id.* ¶ 45)

Though no RSL Plc board meeting took place in August 2000, some of the Defendants composed and executed minutes for a RSL Plc board meeting to accept director resignations. (*Id.* ¶¶ 60-61)  In fact, no RSL Plc board meetings were held from March to November 2000. (*Id.* ¶ 60)  RSL Ltd also did not hold board meetings from July 2000 through early November

3

2000.  However, on November 7, 2000, RSL Ltd's Board met, retained restructuring advisors, and implemented strict controls on its cash flow.  (*Id.* ¶ 49)  RSL Plc's Board did not meet at this time. (*Id.* ¶ 49)

By the end of 2000, RSL Group had less than $80 million in cash.  (*Id.* ¶ 50)  On March 14, 2001, RSL Plc held its first board meeting in a year.  (*Id.* ¶ 62)  Five days later, on March 19, 2001, RSL Ltd commenced insolvency proceedings in Bermuda, where it had been incorporated since 1996, and RSL Plc made an application to the High Court of Justice of England and Wales for the appointment of joint administrators.  (*Id.* ¶¶ 53-54)  Both RSL USA and RSL COM Primecall, Inc., a wholly owned subsidiary of RSL USA, filed Chapter 11 petitions in the United States Bankruptcy Court on March 16, 2001.  (*Id.* ¶ 53)

Pursuant to orders of the High Court of Justice in England and Wales, Steven Anthony Pearson, Peter Norman Spratt, and Neville Barry Kahn were appointed joint administrators of the estate of RSL Plc, then in administration under the United Kingdom Insolvency Act of 1986.  (*Id.* ¶¶ 14, 54)  Kahn resigned as a joint administrator in 2002.  (*Id.* ¶ 14)  On February 19, 2003, Spratt (who was replaced by Michael John Andrew Jervis on June 24, 2003, pursuant to an order of the High Court of Justice of England and Wales (*Id.* ¶ 14)) and Pearson commenced a case ancillary to a foreign proceeding by filing a petition for discovery pursuant to 11 U.S.C. § 304 with the United States Bankruptcy Court for the Southern District of New York.  (*Id.* ¶ 15)  Pursuant to an Order of the Bankruptcy Court, Plaintiff was able to obtain limited discovery, including a deposition of Defendant Nesim Bildirici.  (*Id.* ¶ 15)

    B.  The Defendants

Defendant Nesim Bildirici was a member of RSL Plc's Board of Directors at all times

4

relevant to this action and is a New York resident.  (*Id.* ¶ 16)  Defendant Itzhak Fisher, a New

York resident, was a Board member of RSL Plc from the beginning of the time period relevant to

this action until August 21, 2000, (*Id.* ¶ 18) at which point Defendant Paul Domorski, a resident

of New Jersey, replaced him and remained a Board member through the remainder of the time

relevant to this action.  (*Id.* ¶ 17)  Defendant Steven Schiffman, a resident of Connecticut, joined

RSL Plc's board of directors on August 21, 2000 and remained on the Board for all times

relevant to this action.  (*Id.* ¶ 20)  Defendants Ronald S. Lauder, Jacob Schuster, and Eugene

Sekulow were all Board members of RSL Plc, and are all New York residents.  (*Id.* ¶¶ 19, 21, 22)

Defendants Ronald S. Lauder, Itzhak Fisher, Jacob Schuster, and Eugene Sekulow were

simultaneously directors of both RSL Plc and RSL Ltd.  (*Id.*)

## II.  Discussion

### A.  Standard of Review

All Defendants in this action bring a Motion to Dismiss under Federal Rule of Civil

Procedure 12(b)(6).  "The function of a motion to dismiss 'is merely to assess the legal feasibility

of the complaint . . . .'"  *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d

774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).  Thus,

the Court should not grant the motion unless no facts could be proved by Plaintiff which would

entitle Plaintiff to relief.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Review of

such a motion requires the Court to accept as true Plaintiff's allegations in the Complaint, and

draw all inferences in favor of Plaintiff.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174

(2d Cir. 1993); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y.

2005).  The Court is not concerned with weighing the evidence which would be presented at trial.

*See Chosun Int'l Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005).  However, the motion should not be granted unless it appears "clear" that Plaintiff can prove no set of facts in support of the claim which would entitle Plaintiff to relief consistent with the allegations in the Complaint.  *See Swierkiewicz*, 534 U.S. at 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"  *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).  However, a court may consider public records*, Tornheim v. Eason*, 363 F. Supp. 2d 674, 676 (S.D.N.Y. 2005), as well as documents alleged or referenced in, but not attached to, the complaint.  *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (allowing defendant to produce a prospectus with its motion to dismiss which plaintiff failed to attach to the complaint); *see also 2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC*, No. 00 Civ. 5773, 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23, 2001).

#### B.  Governing Law

Before considering the merits of the claim for dismissal, the Court must decide what law to apply to the case.  *See Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989).  "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice."  Fed.

R. Civ. P. 44.1.  After noting that the Parties briefed the instant motion under New York law, the Defendants attempted to "reserve the defense that this action is unsustainable under English law if the complaint is not dismissed as this motion seeks."  (Mem. In Supp. of Defs.' Mot. to Dismiss 14 n.3)   In response, the Court requested additional briefing on the law to apply in this matter.  Plaintiff gave explicit legal reasons for the application of New York law in its supplemental briefing.  (*See* Pl.'s Mem. in Supp. of Application of New York Law)  Defendants, however, simply reiterated their position that they should be able to request the application of English law at a later time should they deem it to be necessary.  (*See* Supplemental Mem. in Supp. of Def.'s Mot. to Dismiss)

Where the parties do not address the issue of what law to apply, but instead rely on a state's law in their briefs, the court may apply state law under a principle of implied consent.  *See Tehran-Berkeley Civil & Envtl. Eng'rs*, 888 F.2d at 242 (applying New York law as relied upon in the parties' briefs, even though law of Iran could have applied).  In the present action, it is undisputed that RSL Plc was incorporated in England.  The administrators acting as Plaintiffs here also were appointed by English courts.  However, according to the Complaint, each of the nine indentures governing the bonds issued by RSL Plc are governed by New York law.  Furthermore, both Parties make their arguments under New York law.  Therefore, Defendants' attempt to "reserve" the right to argue for the application of English law at a later point does not constitute proper notice of the application of foreign law.  *See Clarkson Co. v. Shaheen*, 660 F.2d 506, 512 n.14 (2d Cir. 1981) ("Here, none of the parties claimed the applicability of Canadian law or asserted that it differs from that of New York.  Each seems to have assumed that New York law governs.  Hence, the district court was not obligated to take judicial notice of Canadian

7

law and correctly applied forum law.").  Similarly here, where the Defendants have not stated why they believe English law governs this case, nor how English law differs from the law of New York, this Court is not obligated to take judicial notice of English law and thus applies the law of New York to this dispute.

>  C.  Fiduciary Duty

Plaintiff alleges two causes of action stemming from the supposed breach of Defendants' fiduciary duties to both Plaintiff and Plaintiff's creditors.  Specifically, Defendants are alleged to have breached these duties by failing to act on behalf of Plaintiff and Plaintiff's creditors between March 2000 and March 2001 by allowing RSL Plc's assets to be wasted and taking on additional debt while failing to hold board meetings at which Defendants could have exercised some judgment regarding Plaintiff's precarious economic situation.

> 1.  Duty of Care

> a.  Directors' Fiduciary Duties

Under New York law, "[a] director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances."  N.Y. Bus. Corp. Law § 717(a).  Directors and officers typically owe fiduciary duties to the corporation and its shareholders, *see Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003); *In re Global Serv. Group, LLC,* 316 B.R. 451, 460 (Bankr. S.D.N.Y. 2004), which include a "duty of care" and a "duty of loyalty."  *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 264 (2d Cir. 1984); *see also Roselink Investors v. Shenkman*, 386 F. Supp. 2d 209, 216 (S.D.N.Y. 2004).  It is well settled that the duty of due care "requires

that a director's decision be made on the basis of reasonable diligence in gathering and considering material information." *Hanson Trust, Plc. v. ML SCM Acquisition Inc.*, 781 F.2d 264, 274 (2d Cir. 1986) (internal quotations and citations omitted); *see also Roselink*, 386 F. Supp. 2d at 220 ("[D]irectors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them.") (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).  This duty to become informed is a serious one, as "[d]irectors may be liable . . . for failing reasonably to obtain material information or to make a reasonable inquiry into material matters." *Hanson Trust,* 781 F.2d at 274-75.  Once informed, "[d]irectors must exercise their 'honest judgment in the lawful and legitimate furtherance of corporate purposes.'" *Id.* at 274 (quoting *Auerbach v. Bennett*, 393 N.E.2d 994, 1000 (N.Y. 1979)); *see also Pereira v. Cogan*, No. 00 Civ. 619, 2001 WL 243537, at *13 (S.D.N.Y. Mar. 8, 2001) ("A board may not 'either formally or effectively abdicate its statutory power and fiduciary duty to manage and direct the management of the business and affairs of the corporation.'") (quoting *Grimes v. Donald,* No. Civ. A. 13358, 1995 WL 54441, at *9 (Del.Ch. Jan. 11, 1995)).

To establish that Defendants breached their duty of care, Plaintiff need only "establish that the offending parties' actions were 'a substantial factor' in causing an identifiable loss." *F.D.I.C. v. Bober*, No. 95 Civ 9529, 2003 WL 21976410, at *1 (S.D.N.Y. Aug. 19, 2003) [hereinafter *Bober II*]. "[B]reaches of fiduciary duty in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages." *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994); *Nw. Nat. Ins. Co. v. Alberts*, 769 F. Supp. 498, 506 (S.D.N.Y. 1994) ("A plaintiff alleging breach of fiduciary duty . . . is not required to meet the higher standard of loss or proximate causation.").  "The reason for this rule"

9

is that "this type of action 'is not merely to *compensate* the plaintiff for wrongs committed . . . [but also] to *prevent* them, by removing agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others . . . .'" *Bober II*, 2003 WL 21976410, at *1 (quoting *Gibbs v. Breed, Abbott & Morgan*, 710 N.Y.S.2d 578, 584 (App. Div. 1994)) (additional internal quotations omitted).  Not surprisingly, this inquiry often raises factual questions which normally are not properly resolved on a motion to dismiss.  *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) ("[T]he proximate cause element of common law fraud . . . is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss."); *Malin v. XL Capital Ltd.*, No. 3:03 Civ. 2001, 2005 WL 2146089, at *4 n.5 (D. Conn. 2005); *F.D.I.C. v. Bober*, No. 95 Civ. 9529, 2002 WL 1929486, at *3 (S.D.N.Y. Aug. 19, 2002) [hereinafter *Bober I*] ("Whether [defendant director's] failure to attend the [board] meetings caused the losses and whether the outcome would have been different had [defendant] actually attended the meetings are questions of causation that rely on disputed facts.").

### b.  Business Judgment Rule

When faced with allegations of misconduct, a defendant director may raise the business judgment rule as an absolute defense.  *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991); *see also Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1064 (N.D. Cal. 1988).  The business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach v. Bennett*, 393 N.E.2d 994, 1000 (N.Y. 1979).  Therefore, unless there is evidence of bad faith or fraud, exercise of the director's discretion "for the common and

general interests of the corporation" may not be questioned by a court, even where "the results show that what [the directors] did was unwise or inexpedient." *Id.*; *see also Stern*, 924 F.2d at 476; *In re Caremark Int'l Inc.*, 698 A.2d 959, 967 (Del. Ch. 1996) (holding that under Delaware law business judgment rule applies even where conclusions were "stupid" or "irrational," as long as "the court determines that the process employed was either rational or employed in *a good faith* effort to advance corporate interests"). Nevertheless, while a court may not substitute its own judgment for that of the corporate board members, the court may consider "the content of their 'judgment' and the extent of the information on which it is based." *Hanson Trust*, 781 F.2d at 275; *see also In re Caremark*, 698 A.2d at 968 (holding that duty is fulfilled when "a director in fact exercises a good faith effort to be informed and to exercise appropriate judgment").

Although the standard of review for business judgments is deferential, to receive the protection of the business judgment rule a director must show an exercise of judgment, not simply the existence of a business decision. Directors' fiduciary duties "require them to do more 'than passively rubber-stamp the decisions of the active managers.'" *Davidowitz v. Edelman*, 583 N.Y.S.2d 340, 344 (N.Y. Sup. Ct. 1992) (quoting *Barr v. Wackman*, 329 N.E.2d 180, 188 (N.Y. 1975)). Thus, where the directors' "methodologies and procedures are so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or a sham, [] inquiry into their acts is not shielded by the business judgment rule." *Hanson Trust*, 781 F.2d. at 274 (internal quotations omitted); *see also Pereira*, 2001 WL 243537, at *14 ("[T]he Directors may not seek the protection of the business judgment rule on the ground that they made no decisions and took no actions, rendering the 'bad faith' standard they invoke inapposite."); *In re RSL.COM PRIMECALL*, Nos. 01 Bankr. 11457-69, 03 Bankr. 2176, 2003 WL 22989669, at

*12 (Bankr. S.D.N.Y. Dec. 11, 2003) ("[T]he business judgment rule does not protect conduct of directors where material decisions are made in the absence of any information and any deliberation.").

<u>c.  Defendants' Duty of Care to RSL Plc</u>

In Count I of the Complaint, Plaintiff alleges that because Defendants did not meet or otherwise discuss the business dealings of RSL Plc, they breached their duty of care to RSL Plc and should not be covered by the business judgement rule.  It is undisputed that the Defendants did not hold board meetings on behalf of RSL Plc during the time period relevant to this action. Despite this, RSL Plc still operated and took actions such as drawing down $25 million from the Lauder loan, apparently at the direction of RSL Ltd.  However, as Plaintiff alleges and Defendants do not contest, no independent board discussions regarding the propriety of this and other business decisions were held on behalf of RSL Plc by its board of directors.

Decisions made without any deliberation are not protected by the business judgment rule. *See Hanson Trust*, 781 F.2d. at 274; *see also In re RSL.COM*, 2003 WL 22989669, at *12 ("Allegations that the RSL USA directors abdicated all responsibility to consider action that was arguably of material importance to the corporation puts directly in question whether the board's decision-making processes were employed in a good faith effort to advance corporate interests."). A board may not simply rubber stamp the decisions of the corporation's managers.  *Davidowitz*, 583 N.Y.S.2d at 344.  Thus, if the facts are as described by Plaintiff, it cannot be said, and Defendants have cited no authority to say, that as a matter of law Defendants should be immunized by the business judgment rule.  Indeed, the law does not tolerate inaction of the sort Defendants are alleged to have engaged in, as Defendants allegedly failed to consider any

information they had regarding the company's financial health and allegedly failed to make a business judgement as a board regarding any financial decision on behalf of RSL Plc.  *See In re RSL.COM*, 2003 WL 22989669, at *13.

Defendants, however, assert several arguments for why the lack of formal board meetings should not eliminate their insulation from Plaintiff's claims under the business judgment rule. First, Defendants point to cases such as *Leslie, Semple & Garrison, Inc. v. Gavit & Co.*, 81 A.D.2d 950, 951 (N.Y. App. Div. 1981), *Grove v. C.I.R.*, 490 F.2d 241, 243 (2d Cir. 1973), and *Simonson v. Helburn*, 97 N.Y.S.2d 406, 413 (N.Y. Sup. Ct. 1950), which hold that small, closely held corporations with directors frequently in close contact with one another may dispense with formalities such as board meetings when making business decisions.  Defendants argue that RSL Plc's closely held status similarly obviated the need for RSL Plc to conduct board meetings. However, this case is distinguishable from *Leslie*, *Grove*, and *Simonson*.  RSL Plc is not a small corporation, as Plaintiff alleges that it accrued more than $1.4 billion in debt.  Further, taking the facts in the Complaint as true, while it is clear that some of RSL Plc's board members had some contact during the period in question, Plaintiff does not concede that there were behind-the-scenes meetings where the business of RSL Plc was discussed by these members, let alone that there was an agreement not to have a board meeting.  At a minimum, Plaintiff's allegations are sufficient to raise fact questions that cannot be resolved by Defendants' Motion to Dismiss.

Second, Defendants argue that they were fully informed regarding RSL Plc's financial matters because some Defendants were also board members of RSL Ltd, and that in that capacity they exercised judgment on behalf of RSL Ltd, the parent of RSL Plc.  Because of their work on behalf of RSL Ltd, Defendants assert that no additional meetings on behalf of RSL Plc were

13

required and, in fact, would have been pointless.  This argument is unpersuasive.  As Plaintiff

notes, "[i]ndividuals who act in a dual capacity as directors of two corporations, one of whom is

parent and the other subsidiary, owe the same duty of good management to both corporations

. . . ." *In re First Cent. Fin. Corp.*, 269 B.R. 502, 512 (Bankr. E.D.N.Y. 2001) (quoting

*Weinberger v. UOP, Inc.*, 457 A.2d 701, 710-11 (Del.1983)).  The Supreme Court has held it is a

"well established principle [of corporate law] that directors and officers holding positions with a

parent and its subsidiary can and do 'change hats' to represent the two corporations separately,

despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).  It has

also noted the general presumption that "directors are wearing their 'subsidiary hats' and not

their 'parent hats' when acting for the subsidiary." *Id.*  Thus, while the duty of good

management "is to be exercised in light of what is best for both companies," *First Central*, 269

B.R. at 512, where an individual is director of both the parent and the subsidiary, and takes an

action which breaches his fiduciary duties to both, "[i]t is equally clear that the subsidiary has a

cause of action against its own director . . . ." *Id*. at 513; *see also Hopps v. Claude Neon, Inc.*,

117 N.Y.S.2d 461, 463-64 (App. Div. 1952).  In any event, "those who operate the parent

company owe no fiduciary duty to the wholly owned subsidiary." *Aviall, Inc. v. Ryder Sys. Inc.*,

913 F. Supp. 826, 832 (S.D.N.Y. 1996), *aff'd* 110 F.3d 892 (2d Cir. 1997).  Thus, even if those

Defendants who were on RSL Ltd's board honored their fiduciary duties to RSL Ltd, there is

nothing about that fact that, as a matter of law, relieves Defendants from Plaintiff's allegations.

Though, as Defendants point out, it may essentially be a "fiction" that individuals who are

directors of both a parent company and its subsidiary "change hats," courts have continued to

"maintain the fiction."  *See United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir.

1985)[1]; *see also In re RSL.COM*, 2003 WL 22989669, at *13 ("[D]irectors who hold dual directorships in the parent-subsidiary context may owe fiduciary duties to each corporation. [Thus,] [t]here is no basis for the principle propounded by a few of the Defendants that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the benefit of its parent corporation.") (internal quotations and citations omitted).

Finally, Defendants argue that even had they met as RSL Plc's board, nothing they could have done would have changed whether the company failed during a particularly precarious time in the telecommunications industry.  Of course, the Court recognizes that "in contrast to the laws of some foreign jurisdictions, . . . there is no absolute duty under American law to shut down and liquidate an insolvent corporation."  *In re Global Serv.*, 316 B.R. at 460 (Bankr. S.D.N.Y. 2004). Further, "[i]t has never been the law in the United States that directors are not afforded significant discretion as to whether an insolvent company can 'work out' its problems or should file a bankruptcy petition."  *In re RSL.COM*, 2003 WL 22989669, at *12.  Nevertheless, it is not clear at this stage in the proceedings that Defendants' fulfillment of their fiduciary duties would have been futile, as that is a matter of dispute between the Parties and not something that can be determined as a matter of law.  *See Bober I*, 2002 WL 1929486, at *3.  Therefore, Defendants' Motion to Dismiss this cause of action is denied.

_____

[1]Defendants attempt to cite to *Jon-T Chemicals* as support for the idea that there is no practical difference between the operation of the parent and the subsidiary.  However, this can only be done by taking quotations out of context.  While *Jon-T Chemicals* contains that statement, it is in the context of whether the subsidiary was an alter ego of the parent for the purposes of piercing the corporate veil.  Further, while the case acknowledges that conceiving of shared directors as "changing hats" is "a fiction," the court very clearly noted its intention to "maintain" that fiction and apply it to the case presented.  *See Jon-T Chems.*, 768 F.2d at 691 ("Instead, we maintain the fiction that an officer or director of both corporations can change hats and represent the two corporations separately, despite their common ownership.").

<u>d.  Defendants' Duty of Care to RSL Plc's Creditors</u>

<u>i.  Duty to Creditors</u>

The second cause of action alleges that the Defendant directors breached the duty of care to RSL Plc's creditors.  When one company owns another, the directors of the parent and the wholly-owned subsidiary must ordinarily manage the affairs of both in the best interests of the *parent* and its shareholders.  *See Aviall*, 913 F. Supp. at 832 ("When one company wholly owns another, the directors of the . . . subsidiary are obligated to manage the affairs of the subsidiary in the best interests only of the parent . . . ."); *see also Roselink*, 386 F. Supp. 2d at 215 (applying Delaware law).  However, once a corporation enters the "zone of insolvency," the directors owe fiduciary duties to the corporations' creditors, in addition to its shareholders.  *See In re Adelphia Comm'ns Corp.*, 323 B.R. 345, 386 n.140 (Bankr. S.D.N.Y. 2005) ("Many courts, including the Second Circuit, this one, and the state courts from which the applicable principles have their origin, have said that when a corporation becomes insolvent or enters into the zone of insolvency, the fiduciary duties of a corporation expand from its stockholders to its creditors.") (citations omitted); *see also Roselink*, 386 F. Supp. 2d at 215; *In re RSL.COM,* 2003 WL 22989669, at *7 ("Insolvency, however, changes the scope of a director's duties, and upon insolvency directors owe fiduciary duties to creditors or, stated differently, to the corporation and to all of its interested constituencies, including creditors and shareholders."); *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, Civ. A. No. 12150, 1991 WL 277613, at *36 n.55, (Del. Ch. 1991) (explaining competing interests of shareholders and creditors that must be

balanced by a director when corporation enters the "zone of insolvency").[2]  *But see Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 788-89 (Del. Ch. 2004) (questioning viability of "zone of insolvency" ).  As other courts have noted, this specially created fiduciary duty requires that a director consider all the parties with interests in the corporation.  *See In re Verestar, Inc.*, 343 B.R. 444, 471-72 (Bankr. S.D.N.Y. 2006) ("[W]hen a corporation is 'in the vicinity of insolvency,' the directors owe fiduciary duties to the entire 'community of interests' of those involved with the corporation, including creditors.") (applying Delaware law); *cf. Clarkson*, 660 F.2d at 513 (holding under New York law that where the defendant directors offered no evidence that they had informed themselves regarding certain loans, or that they had relied in good faith on the statements of others, a jury could find a negligent breach of the duty of care owed to the creditors).

This duty is "deriv[ed] from the principle that the corporate assets constitute a trust fund for the benefit of creditors." *Heimbinder v. Berkovitz*, 670 N.Y.S.2d 301, 307 (N.Y. Sup. Ct. 1998) (internal quotations omitted); *see also In re Hechinger Inv. Co. of Delaware,* 274 B.R. 71, 89 (D. Del. 2002) ("[W]hile this duty does not necessarily place creditor interests ahead of the interests of stockholders, it requires the board to maximize the corporation's long-term wealth creating capacity.").  Thus, the fiduciary duty owed to creditors does not disappear simply because the corporation in the "zone of insolvency" is a subsidiary corporation.  Creditors'

---

[2]Defendants assert that these duties are owed to the creditors "only when the interests of the subsidiary's creditors differ from the interests of the parent and its creditors." (Def.'s Reply Mem.  4)  Defendant does not cite a case for this proposition, and, under New York law, it is incorrect.  *Clarkson Co. v. Sheehan*, 660 F.2d 506, 512 (2d Cir. 1981) (noting that the corporate officer's fiduciary duty to creditors arises out of New York's policy in favor of preserving corporate assets for creditors and therefore arises at insolvency, not just situations involving imminent liquidation).

interests in the assets of the insolvent or nearly insolvent corporation are unchanged by its subsidiary status.  Moreover, "[i]t would be absurd to hold that the doctrine that directors owe special duties after insolvency is inapplicable when the insolvent company is a subsidiary of another corporation.  That is precisely when a director must be most acutely sensitive to the needs of a corporation's separate community of interests, including both the parent shareholder and the corporation's creditors."  *In re RSL.COM*, 2003 WL 22989669, at *13.  Therefore, in a situation such as is alleged here, the directors of the subsidiary must consider the *subsidiary's* creditors' interests in addition to the parent's interests.  This means the directors may have to pursue a course which does not benefit any particular group, including shareholders and creditors, over another.  *See Credit Lyonnais Bank*, 1991 WL 277613 at *36 n.55.

### ii.  Application of Business Judgment Rule

 As it did in the first cause of action, Plaintiff again argues that since Defendants never held a board meeting to specifically discuss the interests of RSL Plc and its creditors, they cannot rely on the business judgment rule to avoid liability for a breach of fiduciary duty.

At a board meeting, Defendants would have been obligated to consider the interests of RSL Plc's creditors.  As RSL Ltd was alleged to be entering the zone of insolvency at the same time as RSL Plc (its financing vehicle) entered the zone of insolvency, RSL Ltd's board also had a duty to consider the interests of its creditors.  These creditors were largely, but not precisely, the same as RSL Plc's creditors. (*See* Defs.' Reply Mem. 2 (acknowledging that 15/16ths of the creditors were common to both RSL Plc and RSL Ltd)  Thus, even if RSL Ltd's board, in protecting the interests of *its* creditors, may have made decisions that *de facto* accounted for the interests of RSL Plc and its creditors, the directors of RSL Plc still had an independent duty to

18

consider the interests of its creditors.  *See In re RSL.COM*, 2003 WL 22989669, at *14 ("PLC

and LTD were entitled to have directors who had due regard for their respective interests and the

interests of their creditors, just as was RSL USA.").  Indeed, the board of RSL Ltd owed no

allegiance whatsoever to RSL Plc, thus, even the slightest variation in the interests between the

two entities nullifies Defendants' argument here.  *See Aviall*, 913 F. Supp. at 832 ("[T]he officers

and directors of a parent company owe allegiance only to that company and not to a wholly

owned subsidiary.").  Moreover, at this point in the proceedings, it is impossible to predict

whether the RSL Plc board would have, in the interest of prolonging the long-term viability of

RSL Plc (and RSL Group at large), made different decisions regarding its operations than those

made by the RSL Ltd board.  Regardless, the duty to consider whether a different decision should

be made did not disappear because the RSL Ltd board met.  "There is no basis for the principle

propounded by a few of the Defendants that the directors of an insolvent subsidiary can, with

impunity, permit it to be plundered for the benefit of its parent corporation," even where there is

partial commonality among the directors of the two entities.  *In re RSL.COM*, 2003 WL

22989669, at *13.

To escape this principle, Defendants point to the offering circular for the February 2000

RSL Plc bonds, which:

> informed prospective noteholders that decisions about funding
> would be made at the RSL Group level, identified the RSL Parent
> board as the relevant decision-makers, presented RSL Plc as
> functionally integrated with RSL Parent, described the RSL
> Group's plan to use the note proceeds in the manner that the
> complaint now challenges as having been improper, and made
> clear that the finances of the consolidated entity rather than those
> of RSL Plc should be the basis of the noteholders' lending
> decisions.

(*See* Mem. In Supp. of Defs.' Mot. to Dismiss 3-4, 9)  Defendants assert that RSL Plc could not

be liable to creditors for mismanagement of their investments when the creditors were informed

that RSL Ltd would control RSL Plc.  This argument misses the mark because it ignores the

derivative nature of the claim made on behalf of the RSL Plc creditors.  "[C]laims based on the

breach of fiduciary duty to creditors when a company is in the zone of insolvency are derivative

of claims of breach of fiduciary duty to the company itself."  *In re Successor I Corp.*, 321 B.R.

640, 659 (Bankr. S.D.N.Y. 2005); *see also In re Scott Acquisition*, 344 B.R. 283, 288-89 (Bankr.

D. Del. 2006) ("These duties . . . are typically derivative of the duty owed to the subsidiary

corporation itself.") (citing numerous cases and Donald J. Wolfe, Jr. & Michael A. Pittenger,

*Corporate And Commercial Practice In The Delaware Court Of Chancery* § 9-2 [a] (2005)).  Or,

as the Delaware Court of Chancery has explained:

> [E]ven in the case of an insolvent firm, poor decisions by directors
> that lead to a loss of corporate assets and are alleged to be a
> breaches [*sic*] of equitable fiduciary duties remain harms to the
> corporate entity itself.  Thus, regardless of whether they are
> brought by creditors when a company is insolvent, these claims
> remain derivative, with either shareholders or creditors suing to
> recover for a harm done to the corporation as an economic entity
> and any recovery logically flows to the corporation and benefits the
> derivative plaintiffs indirectly to the extent of their claim on the
> firm's assets.

*Prod. Res. Group*, 863 A.2d at 792.

Thus it is here, as the claim on behalf of the creditors is based not on any fraud about the

relationship between parent and subsidiary, or anything deceptive in the offering circular, but on

the alleged failure of the Defendant directors to honor the duty of care they owed to the

subsidiary and its creditors while in the zone of insolvency.  Just because the creditors were

notified that the parent would guarantee the subsidiary's loan and otherwise would direct the

business of the subsidiary, the directors of the subsidiary still owed a duty of care to the

subsidiary itself. Accordingly, the Motion to Dismiss this cause of action is denied.

### III. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is DENIED.

SO ORDERED.

Dated:        September 14, 2006
              New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21

Service List

John H. Bae, Esq.
Ingrid Mara Bagby, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Fax: (212) 504-6666
*Counsel for Plaintiff*

John S. Kiernan, Esq.
Emily O. Slater, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue
New York, NY 10022
Fax: (212) 909-6836
*Counsel for Defendants*