# MEMORANDUM IN SUPPORT OF ITZHAK FISHER'S MOTION FOR SUMMARY JUDGMENT

FILED UNDER SEAL

Keara A. Bergin (KB-0831)
Thomas E.L. Dewey (TD-6243)
DEWEY PEGNO & KRAMARSKY LLP
220 East 42nd Street
New York, NY 10017
(212) 943-9000
(212) 943-4325 (fax)
*Co-counsel for defendant Itzhak Fisher*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RSL COMMUNICATIONS PLC, by Michael John Andrew Jervis and Steven Anthony Pearson as the Joint Administrators, | |
| Plaintiff, | Civ. No. 04-5217 (RJS) |
| -against- | |
| NESIM BILDIRICI, PAUL DOMORSKI, ITZHAK FISHER, RONALD S. LAUDER, STEVEN SCHIFFMAN, JACOB SCHUSTER and EUGENE SEKULOW, | |
| Defendants. | |

# MEMORANDUM IN SUPPORT OF
## ITZHAK FISHER'S MOTION FOR SUMMARY JUDGMENT

FILED UNDER SEAL

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ iii

Preliminary Statement........................................................................................................... 1

Statement of Undisputed Facts ............................................................................................. 2

    A.    Itzhak Fisher's Roles Within RSL ......................................................................... 2

    B.    The Relationship Between Ltd. and Plc................................................................. 3

    C.    Itzhak Fisher Leaves RSL ..................................................................................... 4

Argument ............................................................................................................................... 7

I.    THE SEPARATION AGREEMENT'S EXPRESS TERMS RELEASE
    CLAIMS OF RSL AFFILIATES SUCH AS PLC ..................................................... 7

    A.    Mr. Fisher Was Released By The "Companies", Defined To Include
    "Any Affiliates" Of Ltd. And ITG Such as Plc ................................................... 8

    B.    The Intent To Bind Plc To The Release Is Evident From the
    Agreement's Terms................................................................................................ 9

II.    THE UNDISPUTED EXTRINSIC EVIDENCE LEAVES NO DOUBT
    THAT THE PARTIES INTENDED TO BIND AFFILIATES OF LTD.,
    SUCH AS PLC, TO THE RELEASE ..................................................................... 12

    A.    Each Individual Signatory Understood And Intended That
    The Agreement Bound Affiliates of Ltd. and ITG Such as Plc ........................... 12

    B.    The Parties Intended That Mr. Fisher Separate
    From RSL In An Amicable and Orderly Fashion ................................................ 13

    C.    The Form of Mr. Fisher's Separation Agreement—Including
    "Affiliates" as Falling Within the Scope of the Release—Was
    Used For Other Departing Personnel ................................................................... 14

III.    THE PARTICULAR CHARACTERISTICS OF PLC AND ITS
    RELATIONSHIP WITH LTD. FURTHER SUPPORT SUMMARY
    JUDGMENT ............................................................................................................ 14

FILED UNDER SEAL

*Page*

IV.     PLC'S CLAIMS AGAINST MR. FISHER ARE INCONSISTENT WITH
        CONSIDERATIONS OF FAIRNESS AND EQUITY ......................................................17

V.      PLC BREACHED THE RELEASE BY INSTITUTING THIS LAWSUIT,
        AND MR. FISHER IS ENTITLED TO SUMMARY JUDGMENT ON HIS
        COUNTERCLAIM ........................................................................................................18

Conclusion ....................................................................................................................................19

**FILED UNDER SEAL**

## <u>TABLE OF AUTHORITIES</u>

*Federal Cases*                                                                                           *Page(s)*

*Bank of America Nat'l Trust and Savings Ass'n  v. Gillaizeau,*
  766 F.2d 709 (2d Cir.1985).....................................................................................7

*Banko Co., Ltd. v. Starrett Housing Corp.,*
  No. 90 Civ. 2178, 1991 WL 220958 (S.D.N.Y. Oct. 15, 1991) ........................................15

*Consol. Edison, Inc. v. Northeast Utilities,*
  426 F.3d 524 (2d Cir. 2005).....................................................................................8

*Curry Road Ltd. v. K Mart Corp.,*
  893 F.2d 509 (2d Cir. 1990)....................................................................................12

*Fabry's S.R.L. v. IFT Intern., Inc.,*
  No. 02 Civ. 9855, 2003 WL 21203405 (S.D.N.Y. May 21, 2003)....................................18

*Galli v. Metz,*
  973 F.2d 145 (2d Cir. 1992).....................................................................................9

*Faulkner v. National Geographic Soc.,*
  452 F. Supp. 2d 369 (S.D.N.Y. 2006).......................................................................14

*Jerry's Gen. Contracting Serv., Inc. v. Republic of Philippines,*
  No. 86 Civ. 3266, 1987 WL 16369 (S.D.N.Y. Aug. 21, 1987) ........................................7

*Hunt, Ltd. v. Lifschultz Fast Freight, Inc.,*
  889 F.2d 1274 (2d Cir. 1988)...................................................................................12

*King World Productions, Inc. v. Financial News Network, Inc.,*
  660 F. Supp. 1381 (S.D.N.Y. 1987)..........................................................................13

*Kraft Foods, Inc. v. All These Brand Names, Inc.,*
  213 F. Supp. 2d 326 (S.D.N.Y. 2002)........................................................................8

*In re Mid-West Metal Products, Inc.,*
  13 B.R. 562 (D. Kan. Bankr. 1981) ..........................................................................16

*Natwest USA Credit Corp. v. Alco Standard Corp.,*
  858 F. Supp. 401 (S.D.N.Y. 1994) ......................................................................10, 17

*Newbro v Freed,*
  409 F. Supp. 2d 386 (S.D.N.Y. 2006)........................................................................19

FILED UNDER SEAL

*Federal Cases*                                                                                   *Page(s)*

*Nycal Corp. v. Inoco PLC*,
    988 F. Supp. 296 (S.D.N.Y. 1997) ..............................................................12

*Omni Quartz v. CVS Corp.*,
    287 F.3d 61 (2d Cir. 2002)...........................................................................8

*Onanuga v. Pfizer, Inc.*,
    369 F. Supp. 2d 491 (S.D.N.Y. 2005)..........................................................19

*People Express Pilot Merger Comm. v. Texas Air Corp.*,
    No. 87-1155, 1987 WL 18450 (D.N.J. Oct. 14, 1987) ......................................15

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (S.D.N.Y. Bankr. 1999)..........................................................16

*Shaw Group, Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003).........................................................................10

*Trustees of the Am. Fed'n of Musicians and Employers' Pension Fund v. Steven Scott Enters.*,
    40 F. Supp. 2d 503 (S.D.N.Y. 1999)..............................................................8

*Xtria LLC v. Tracking Systems, Inc.*,
    No. 3:07-CV-0160-D, 2007 WL 2719884 (N.D. Tex. Sept. 18, 2007) ...............11, 15, 17


*State Cases*

*Daley v. Related Companies, Inc.*,
    198 A.D.2d 118, 603 N.Y.S.2d 160 (1st Dep't 1993) ......................................11

*Edgreen v. Learjet Corp.*,
    180 A.D.2d 562, 580 N.Y.S.2d 260 (1st Dep't 1992) ......................................11

*Hack v. United Capital Corp.*,
    247 A.D.2d 300, 669 N.Y.S.2d 280 (1st Dep't 1998) ........................................7

*Hirsch v. S. Berger Import & Mfg. Corp.*,
    67 A.D.2d 30, 414 N.Y.S.2d 324 (1st Dep't 1979) ......................................11, 15

*Madison Pictures v. Pictorial Films*,
    6 Misc.2d 302, 151 N.Y.S.2d 95 (Sup. Ct. N.Y. Co. 1956) ...........................17-18

FILED UNDER SEAL

*State Cases*                                                                                      *Page(s)*

*Mangini v. McClurg,*
    24 N.Y.2d 556, 301 N.Y.S.2d 508 (1969) ........................................................................7

*Nationwide Financial Corp. of Louisiana v. Kaplan Mobile Home Sales, Inc.,*
    421 So. 2d 443 (La. Ct. App. 1982) .............................................................................11

*Silinksy v. State-Wide Ins. Co.,*
    30 A.D.2d 1, 289 N.Y.S.2d. 541 (2d Dep't 1968) ..........................................................10


*Statutes, Rules & Other Authorities*

*Black's Law Dictionary* (8th ed. 2004) ...................................................................................9

Fed. R. Civ. P. 56 ...................................................................................................................1, 7

**FILED UNDER SEAL**

Itzhak Fisher respectfully submits this memorandum in support of his motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the complaint of plaintiff RSL Communications Plc ("Plc") against him with prejudice, and granting him summary judgment on his counterclaim for breach of contract.[1]

## Preliminary Statement

The release in Mr. Fisher's Separation of Employment and General Release Agreement dated as of August 21, 2000 ("Separation Agreement") conclusively and unambiguously bars Plc's claims against him. Mr. Fisher, the co-founder and former Chief Executive Officer of Plc's parent, RSL Communications, Ltd. ("Ltd."), and a director of Ltd. and several of its subsidiaries, including Plc, executed the Separation Agreement in good faith and in reliance on its express terms. Those terms included a broad and general release of all claims against him that were in any way connected with his affiliation with Ltd. and its affiliates—which incontrovertibly include Plc's current claims for breach of fiduciary duty—and representations that the Separation Agreement had been duly authorized and executed. Mr. Fisher negotiated and discussed the terms of his separation with various RSL representatives, including directors of Ltd. who were also directors of Plc, RSL's General Counsel and its most senior Human Resources executive and his Separation Agreement was approved and executed.

Plc rests on the absence of its name stated expressly within the Separation Agreement to now claim that Mr. Fisher's release does not bind it. This obfuscation must be rejected: the Separation Agreement expressly binds "any affiliates" of Ltd., which unquestionably include Plc,

---

[1] Mr. Fisher's motion is based on grounds additional to those set forth in the memorandum filed on behalf of all defendants by Debevoise & Plimpton, which is incorporated herein (cited as "Defendants' Brief" or "Def. Br."). Should the Court grant defendants' motion, Mr. Fisher's release defense would be rendered moot, but his counterclaim for breach of contract against Plc would remain ripe for consideration.

**FILED UNDER SEAL**

and was executed by Ltd. on its own behalf and on behalf of its affiliates.  In addition, should the

Court need to consider extrinsic evidence, each of the individual signatories of the Separation

Agreement confirms that the parties intended the Separation Agreement to bind affiliates such as

Plc.  Moreover, given the particular characteristics of Plc as a non-operating subsidiary and its

history of having its discrete business functions carried out by Ltd. directors and management,

any notion that Ltd. lacked authority to bind Plc to the Separation Agreement, or that a formal

meeting of the Plc Board was required to bind Plc, would violate principles of agency or, in the

alternative, reverse veil piercing.  Finally, permitting Plc to avoid the Separation Agreement's

release would frustrate—not achieve—the parties' undisputed intent in August 2000 and would

run afoul of considerations of equity and fairness.  Mr. Fischer seeks only to enforce the benefit

of the bargain the parties struck upon his departure.  For the reasons set forth below, Plc's claims

against Mr. Fisher should be dismissed and summary judgment granted on his counterclaim.

**Statement of Undisputed Facts**

### A.     Itzhak Fisher's Roles Within RSL

Itzhak Fisher and Ronald Lauder were the co-founders of RSL Communications, Ltd.

("Ltd."), the holding company parent of Plc.  (Def. 56.1 ¶ 1; Declaration of Itzhak Fisher dated

November 28, 2007 ("Fisher Decl.") ¶ 2)[2]  Mr. Fischer was, from inception, a director of Ltd. and

its President and Chief Executive Officer.  (Def. 56.1 ¶ 11; Fisher Decl. ¶ 6; Schuster Tr.

166:7-167:4 (attached as Exhibit D to the Affirmation of Keara A. Bergin dated November 29,

2007 ("Bergin Aff."))  Ltd. and its affiliated entities (collectively, the "RSL Group" of

companies) grew through numerous acquisitions, and in early 2000 there were 85 affiliates in 22

countries worldwide.  (Def. 56.1 ¶ 2)

---

[2] We incorporate and reference Defendants' 56.1 Statement and the evidence referred to therein,
which is cited to as "Def. 56.1 ¶ __."

FILED UNDER SEAL

Mr. Fisher had two written employment agreements, one with Ltd. and the other with International Telecommunications Group ("ITG"), an entity acquired by Ltd. (and later renamed as RSL COM North America, Inc.). (Bergin Aff. Ex. B (Itzhak Fisher's Amended Answer and Counterclaims), at internal Ex. A; Fisher Decl. ¶ 3)  Mr. Fisher's agreement with Ltd. confirmed his position as CEO and further required him to serve "as an officer or director or otherwise performing services for any 'Affiliate' of the Company as requested by the Company.  An 'Affiliate' of the Company means any entity that controls, is controlled by or is under common control with the Company."  (Bergin Aff. Ex. B, at internal Ex. A § 2(a))

At Ltd.'s request, Mr. Fisher became a director of Plc when Ltd. caused it to be formed in 1996, and served as a Plc director until his resignation in August 2000.  (Def. 56.1 ¶¶ 4, 11; Fisher Decl. ¶ 2; Declaration of Mary Anne Spencer dated November 27, 2007 ("Spencer Decl.") ¶ 5; Declaration of Avery S. Fischer dated November 28, 2007 ("Fischer Decl.") ¶ 5)  Also at Ltd.'s request, Mr. Fisher became a director of other RSL affiliates such as RSL COM Europe, RSL COM USA, and RSL COM Australia.  (Fisher Decl. ¶ 4; *see* Fischer Decl. ¶ 8; *see* Spencer Decl. ¶ 8)  Paul Domorski, who succeeded Mr. Fisher as Ltd.'s CEO in August 2000, similarly was requested to, and did, serve as a Plc director after Mr. Fisher's resignation.  (Def. 56.1 ¶ 11; Domorski Tr. 21:7-14 (attached as Bergin Aff. Ex. E))

**B.**      **The Relationship Between Ltd. and Plc**

The relationship between Ltd. and Plc is set forth in, and we respectfully refer the Court to, Defendants' Brief at Facts section entitled "Structure of RSL Communications, Ltd." and "The PLC Board of Directors."  (*See also* Def. 56.1 ¶¶ 1-16)  As most relevant here, these facts include:

FILED UNDER SEAL

- Ltd. caused Plc to be incorporated in 1996.

- Plc was a wholly-owned subsidiary of Ltd., and was structured as a passive intermediate holding company for North American and European subsidiaries.

- Plc issued debt on behalf of the RSL Group, all of which was guaranteed by Ltd.

- Plc did not have any independent operations, employees or offices.

- Plc had no creditors other that the noteholder lenders to the RSL Group.

- Ltd. employees administered all processes of borrowing funds in Plc's name, including preparation and filings of offering circulars and presentations to prospective lenders.

- Ltd. employees administered disbursements of funds borrowed in Plc's name from Ltd.'s New York offices.

- The funds raised in Plc's name were co-mingled with funds raised in Ltd.'s name (through public shares of stock) in investment accounts in Plc's names.

- Ltd. employees transferred funds from the Plc investment account to Ltd.'s account for subsequent disbursement to operating subsidiaries within the RSL Group.

- Plc disclosed to prospective investors its limited role in the RSL Group, including the facts that it had no operations, that the Ltd. directors and executives were the relevant decision makers and that Ltd. was the effective borrower of funds.

## C.    <u>Itzhak Fisher Leaves RSL</u>

In early to mid-2000, Mr. Fisher and RSL mutually agreed to a change in leadership at RSL.  (Fisher Decl. ¶ 5; Lauder Tr. 107:23-109:13 (attached at Bergin Aff. Ex. F); Schuster Tr. 166:7-168:5 (Bergin Aff. Ex. D))  At the Ltd. Board's request, Mr. Fisher led the search for his successor, and arranged for an orderly transition to Mr. Domorski.  (Def. 56.1 ¶ 11; Schuster Tr. 166:7-167:4 (Bergin Aff. Ex. D))  In late July or early August 2000, Mr. Fisher negotiated the

**FILED UNDER SEAL**

terms and conditions under which he was to leave the RSL Group with various RSL

representatives, including Ronald Lauder, non-executive Chairman and major shareholder of

Ltd. and a director of Plc, Jake Schuster, a director of Ltd. and Plc, Mary Anne Spencer, Ltd.'s

Vice President of Global Human Resources, and Avery Fischer, Ltd.'s General Counsel and Vice

President for Legal Affairs.  (Fisher Decl. ¶ 5; Fischer Decl. ¶¶ 2, 6; Spencer Decl. ¶¶ 2, 6)

Following approval by Ltd. Board members, Mr. Fisher, Ms. Spencer and Mr. Fischer discussed,

finalized and executed the Separation Agreement.  (Fisher Decl. ¶¶ 5-8; Fischer Decl. ¶¶ 2, 6;

Spencer Decl. ¶¶ 2-6)

    The form of the Separation Agreement was substantially similar to the form routinely

used by the RSL Group in connection with departing executives, and the substance of

Mr. Fisher's release was virtually identical to the releases given by the RSL Group to other

executives in negotiated separations.  (Fischer Decl. ¶ 7; Spencer Decl. Exs. A & B; Bergin Aff.

Ex. B, at internal Ex. C). As relevant here, the Separation Agreement provides as follows:

- The definition of "Companies", the entities bound by the agreement, states that, "for the purposes hereof, the Companies shall include the Companies and any affiliates of the Companies."  (Bergin Aff. Ex. B, at internal Ex. C, at 1)

- The agreement effected a settlement and release of all claims "arising out of or in any way related to [Mr. Fisher's] employment with the Companies."  (*Id.*)

- "The Companies fully release, relieve and discharge Employee of and from any and all manner of actions and causes of action, in law or in equity, rights, suits, debts, liens, contracts, agreements, promises, liabilities, claims, counterclaims, demands, obligations, accounts, reckonings, deficiencies, guarantees, damages, losses, costs, and expenses (including, without limitation, legal fees) or every kind or character whatsoever, whether known or unknown, suspected or unsuspected, mature or to mature in the future, disclosed, or undisclosed, concealed or hidden, fixed or contingent, at law or in equity, which, as of the date of this Agreement, the Companies had, now have, or may hereafter have or claim to have against Employee

FILED UNDER SEAL

(collectively, the "RSL Claims") by reason of any matter, cause or thing whatsoever, from the beginning of time, through and including the date hereof, including, without limitation, any and all of the RSL Claims arising out of, or which hereafter may be alleged or claimed to arise out of, or be in any way connected with, either directly or indirectly, any and all agreements other than any claim related to Employee's performance of this Agreement, whether written or oral, or any other form of affiliation between Employee and the Companies, up to and including the date hereof (hereinafter collectively referred to as the "RSL Released Claims")." (*Id.* § 5.02)

- "The Companies hereby covenant and represent that they have not instituted, and will not institute, any complaints, claims, charges or lawsuits, with any governmental agency or any court, against Employee by reason of any claim, present or future, known or unknown, arising from or related in any way to his employment with the Companies or the termination of such employment, or any relationship, association, or transaction to date between the parties hereto or any of their predecessors or their respective agents, employees or officers, other than any claim related to Employee's performance of this Agreement." (*Id.*)

- The Companies agreed to indemnify and hold Fisher harmless from and against any and all damages or expenses, including attorney's fees, incurred by Fisher as a result of breach of the Release Agreement. Those fees were to be pre-paid by the Companies instead of taking the form of reimbursement to Mr. Fisher. (*See id.* § 5.05)

Itzhak Fisher specifically informed RSL that he wanted to make sure the Separation Agreement would operate as a full release of any potential claims against him arising out of his various roles within the RSL Group.  (Fisher Decl. ¶ 7; Fischer Decl. ¶ 9)  Avery Fischer agreed and used the broad form of release and expansive definition of "Companies" in the Separation Agreement to achieve that intent.  (Fisher Decl. ¶ 8; Fischer Decl. ¶ 9)

On or about August 3, 2000, RSL publicly announced that Mr. Fisher was leaving RSL and that Mr. Domorski would succeed him.  (Bergin Aff. Ex. E)  On or about August 21, 2000, Mr. Fisher signed a letter of resignation, drafted by Avery Fischer, to effect his formal resignation from his positions with RSL, including as director of its numerous affiliates, and his

**FILED UNDER SEAL**

Separation Agreement was executed that same day.  (Bergin Aff. Ex. B, at internal Ex. B; Fisher

Decl. ¶ 6)  Mr. Schuster testified that Mr. Fisher left on "very, very good terms" with the

Company.  (Schuster Tr. 167:11-168:5 (Bergin Aff. Ex. D))

<u>Argument</u>

**I.   THE SEPARATION AGREEMENT'S EXPRESS TERMS RELEASE CLAIMS OF RSL AFFILIATES SUCH AS PLC.**

In New York, a release is "a jural act of high significance without which the settlement of

disputes would be rendered all but impossible. It should never be converted into a starting point

for renewed litigation except under circumstances and under rules which would render any other

result a grave injustice." *Mangini v. McClurg*,  24 N.Y.2d 556, 563, 301 N.Y.S.2d 508,

513 (1969); *see also Jerry's Gen. Contracting Serv., Inc. v. Republic of Philippines*, No. 86

Civ. 3266, 1987 WL 16369, at *1 (S.D.N.Y. Aug. 21, 1987) (holding release barred plaintiff's

claim).[3]  Accordingly, the putative releaser—here, Plc—bears the ultimate burden of persuasion

of showing that it is not bound by the release.  *E.g., Hack v. United Capital Corp.*, 247 A.D.2d

300, 301, 669 N.Y.S.2d 280, 282 (1st Dep't 1998) (plaintiff failed to avoid effect of release); *see*

*Mangini,* 24 N.Y.2d at 563, 301 N.Y.S.2d at 513-14 ("the releaser . . . must sustain the burden of

persuasion if he is to establish that the general language of the release, valid on its face and

properly executed . . . does not represent the intent of the parties").  Because there are no

material facts in dispute concerning the applicability of the release to Plc's claims here, the Court

should grant summary judgment to Mr. Fisher.  Fed. R. Civ. P. 56.

---

[3] The Separation Agreement is governed by New York law.  In New York, releases are to be interpreted under traditional contract principles. *See generally Bank of America Nat'l Trust and Savings Ass'n  v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir.1985).

FILED UNDER SEAL

Summary judgment is appropriate where a contract's terms have a "definite and precise meaning" that is "not reasonably susceptible to different interpretations".[4] *E.g., Omni Quartz v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."); *Kraft Foods, Inc. v. All These Brand Names, Inc.*, 213 F. Supp. 2d 326, 330 (S.D.N.Y. 2002) (affirming summary judgment in relevant part on grounds that release was unambiguous).

Plc argues that Mr. Fisher is not entitled to summary judgment because the word "Plc" does not appear on the face of the Separation Agreement. (Letter dated October 31, 2007 from plaintiff's counsel to the Court) While that is accurate as a matter of fact, it disingenuously ignores the language of the Separation Agreement—language which unambiguously indicates that RSL affiliates such as Plc are bound by its terms as a matter of law.

### A.   Mr. Fisher Was Released By The "Companies", Defined To Include "Any Affiliates" Of Ltd. And ITG Such as Plc.

The broad and general release in Section 5.02 of the Separation Agreement applies to, and governs, claims against Mr. Fisher arising out of any "form of affiliation" he had with the "Companies". The term "Companies" used in Section 5.02 is defined on the very first page of the Separation Agreement: the parties to the contract unambiguously include not only Ltd. and ITG, with which Mr. Fisher had written employment contracts being modified therein, but also "any affiliates of the Companies". Reading this definition into Section 5.02, the only reasonable

---

[4] If the parties' intent can be determined from the "four corners" of a contract, the Court should grant summary judgment where the contract is unambiguous. *See Consol. Edison, Inc. v. Northeast Utilities*, 426 F.3d 524, 527 (2d Cir. 2005) (reversing denial of summary judgment where contract terms were unambiguous).

FILED UNDER SEAL

conclusion is that each of Ltd., ITG and "any affiliates" thereof gave Mr. Fisher a release of their claims against him, include breach of fiduciary duty claims.

It is undisputed that Plc, a wholly-owned subsidiary of Ltd., was an "affiliate" of Ltd. *See Black's Law Dictionary* 63 (8th ed. 2004) ("affiliate" includes "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation"); *see also* Bergin Aff. Ex. B, at internal Ex. A § 2(a))  Thus, while the Separation Agreement lacks the word "Plc"—or the name of any of the other 85 subsidiaries within the RSL Group in 2000—it unambiguously refers to Plc by including within its scope the "affiliates" of Ltd. and ITG.  (Fischer Decl. ¶ 11)

### B.    The Intent To Bind Plc To The Release Is Evident From the Agreement's Terms.

*First,* the Separation Agreement's definition of "Companies" applies broadly "for the purposes hereof".  Failing to apply that definition beyond the paragraph in which it appears would make no sense at all, given that Mr. Fisher neither held employment contracts with, nor was the President and Chief Executive Officer of, any other RSL affiliate.  (Fisher Decl. ¶ 3)  Such a restrictive application of the definition of "Companies" would effectively render it meaningless, an interpretation which the Court must avoid.  *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("an interpretation that 'gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect'") (internal citations omitted).[5]

---

[5] For the same reason, failing to import "any affiliates" into the identity of "Companies" in Section 5.02 would render part of the release's scope meaningless.  If the parties had intended to restrict the release to claims only belonging to Ltd. and ITG, due to the existence of Mr. Fisher's employment agreements with those entities, the release would have been limited to any claims arising out of "any and all agreements" between them, and would not have needed to include the broader range of claims arising out of "any other form of affiliation".

*Second,* the Separation Agreement's other provisions confirm the intent that the release include affiliates of Ltd. and ITG.  For example, Sections 4.02 and 4.05 respectively obligate the "Companies" (a) to refrain from assisting any other person in initiating or pursuing any claims against Mr. Fisher and (b) to not take any action which would adversely affect any of the rights provided for hereunder.   It would make no sense for Ltd. and ITG to give direct releases of their claims and agree to refrain from assisting third parties in bringing claims, without *also* agreeing to eliminate the risk that their wholly-owned subsidiaries would bring claims against Mr. Fisher. Permitting a subsidiary to bring claims that Ltd. could not assert itself—when, particularly in the case of Plc which had no in-house legal counsel, employees or operations of its own, Ltd. would necessarily have to "assist" it if Plc wanted to assert such claims and thereby violate Section 4.02—hardly would achieve the stated purpose of the Separation Agreement to provide for the release of all claims "arising out of or in any way related to Employee's employment with the Companies".  The only interpretation that gives full meaning and effect to the contract's provisions is to read "affiliates" into the reference to "Companies" in Section 5.02.  *See Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003) ("In interpreting the parties' [contract] we are, of course, obliged to give 'full meaning and effect to all of its provisions.'") (internal citation omitted).

*Third,* the Court must construe a contract so as to avoid an interpretation that will "result in an absurdity, an injustice or have an inequitable or unusual result." *See Natwest USA Credit Corp. v. Alco Standard Corp.,* 858 F. Supp. 401, 413 (S.D.N.Y. 1994) (interpreting contract in way most consistent with its language and in order to avoid inequitable result) (citing *Silinksy v. State-Wide Ins. Co.*, 30 A.D.2d 1, 289 N.Y.S.2d. 541, 549 (2d Dep't 1968)).  The Separation Agreement did not enumerate the 85 affiliates bound by its terms because it expressly referred to

10

FILED UNDER SEAL

them as "any affiliates" on the first page of the Separation Agreement in the definition of "Companies". To hold otherwise would cause an inequitable and unusual result at odds with the parties' expressed intent and governing rules of contract interpretation.

Last, courts will enforce releases entered into on a subsidiary's behalf by its parent where, as here, the language of the agreement confirms that it was to be bound. *E.g., Xtria LLC v. Tracking Systems, Inc.*, No. 3:07-CV-0160-D, 2007 WL 2719884, at *3, *13 (N.D. Tex. Sept. 18, 2007) (release signed by parent applied to non-signatory subsidiary and constituted defense to subsidiary's lawsuit and/or claim against parent for failing to prevent subsidiary from filing suit). More generally, agreements signed by a parent will be enforced when they indicate that the subsidiary is intended to be bound. *See Daley v. Related Companies, Inc.*, 198 A.D.2d 118, 118-19, 603 N.Y.S.2d 160, 161 (1st Dep't 1993) (subsidiary could not be sued on contract signed by parent without some provision which would bind subsidiary) (citing *Edgreen v. Learjet Corp.*, 180 A.D.2d 562, 563, 580 N.Y.S.2d 260, 261 (1st Dep't 1992) (same)); *Hirsch v. S. Berger Import & Mfg. Corp.*, 67 A.D.2d 30, 34, 414 N.Y.S.2d 324, 327 (1st Dep't 1979) (holding argument that agreement parent corporation executed on behalf of itself and its "affiliated companies" did not bind subsidiary to be "specious" in view of relationship between corporations and their sharing of offices); *Nationwide Financial Corp. of Louisiana v. Kaplan Mobile Home Sales, Inc.*, 421 So. 2d 443, 445-46 (La. Ct. App. 1982) (subsidiary bound by agreement signed by parent defining parties to include "all subsidiaries and affiliates"). This Court should similarly enforce the release against Plc as expressly intended in the terms of the Separation Agreement.

FILED UNDER SEAL

II.   **THE UNDISPUTED EXTRINSIC EVIDENCE LEAVES NO DOUBT THAT THE PARTIES INTENDED TO BIND AFFILIATES OF LTD., SUCH AS PLC, TO THE RELEASE.**

Even if the Court were to conclude that the Separation Agreement's release language is ambiguous in some way, it nonetheless should grant summary judgment to Mr. Fisher because the extrinsic evidence uniformly confirms that the parties intended to bind Ltd. and ITG affiliates such as Plc in the Separation Agreement.[6] *See Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 304 (S.D.N.Y. 1997) (granting summary judgment where extrinsic evidence of parties' intent revealed that claims had been released); *see also Chock Full O'Nuts Corp. v. Tetley, Inc.*, 152 F.3d 202, 204-05 (2d Cir. 1998).

A.   **Each Individual Signatory Understood And Intended That The Agreement Bound Affiliates of Ltd. and ITG Such as Plc.**

After terms of Mr. Fisher's separation were approved by Ltd., the Separation Agreement was finalized and executed by three individuals:  Avery Fischer, the General Counsel and Vice President of Legal Affairs of Ltd. and the Assistant Secretary of ITG; Mary Anne Spencer, the Vice President of Global Human Resources of Ltd.; and Mr. Fisher. Notably, each of those individuals has confirmed that he or she understood and intended that the obligations of the Separation Agreement were those of Ltd., ITG and their affiliates such as Plc.  (Fisher Decl. ¶¶ 9-11; Spencer Decl. ¶¶ 9-10; Fischer Decl. ¶¶ 9-11)

In addition, both Ms. Spencer and Mr. Fischer were aware in August 2000 that Mr. Fisher, the co-founder of RSL, held multiple positions at various RSL affiliates.  (Spencer

---

[6] A contract is ambiguous only where its terms suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement …." *E.g., Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir. 1990); *see also Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1988) (ambiguity cannot be created by differing interpretations of a provision, especially where such interpretation would "strain[ ] the contract language beyond its reasonable and ordinary meaning").

FILED UNDER SEAL

Decl. ¶ 8; Fischer Decl. ¶ 8)  They each have confirmed, consistent with Mr. Fisher's intent and

understanding, that Ltd. entered the Separation Agreement on its own behalf and on behalf of its

affiliates.  (Spencer Decl. ¶ 9-10; Fischer Decl. ¶ 9-11)  Avery Fischer, who by virtue of his

position as General Counsel uniquely would be aware of the parties' intention and authority in

2000 to bind affiliates such as Plc, confirms the interpretation of *Mr. Fisher*, not that of Plc.[7]

(Fischer Decl. ¶ 9-12)

### B.      The Parties Intended That Mr. Fisher Separate From RSL In An Amicable and Orderly Fashion.

Mr. Fisher's departure from RSL in August 2000 was neither sudden nor forced.  Rather,

he and RSL agreed earlier that year that they had reached an appropriate time to part ways and to

introduce a new CEO to lead RSL.  (Fisher Decl. ¶ 5; Lauder Tr. 107:23-109:13 (attached at

Bergin Aff. Ex. F); Schuster Tr. 166:7-168:5 (Bergin Aff. Ex. D))  At the Ltd. Board's request,

Mr. Fisher led the search for his successor and arranged for an orderly transition to

Mr. Domorski.  (Def. 56.1 ¶ 11; Schuster Tr. 166:7-167:4 (Bergin Aff. Ex. D))  As Mr. Schuster

testified, Itzhak had worked "24/7" at RSL and "left on very, very good terms".  (Schuster Tr.

167:11-168:5 (Bergin Aff. Ex. D))  It is neither surprising nor unusual that in such

circumstances, given Mr. Fisher's significant support and contributions to the RSL Group, the

parties intended to, and did, provide him with a broad and general release by all RSL affiliates in

connection with his departure.

---

[7] "Surely a General Counsel of a corporation may be presumed to be knowledgeable of the scope of authority of the corporation's agents and officers, and ordinarily, the testimony of a General Counsel would be expected to favor the corporation." *King World Productions, Inc. v. Financial News Network, Inc.*, 660 F. Supp. 1381, 1385-86 (S.D.N.Y. 1987) (concluding failure to call General Counsel to testify supports inference that his testimony would have been adverse to the corporation's contention).  Plaintiff never took discovery of Mr. Fischer or Ms. Spencer.

FILED UNDER SEAL

C.    **The Form of Mr. Fisher's Separation Agreement—Including "Affiliates" as Falling Within the Scope of the Release—Was Used for Other Departing Personnel**

The form and substance of the release language in Mr. Fisher's Separation Agreement were either verbatim or virtually identical to other Separation Agreements executed with other individuals departing RSL.  (*E.g.*, Spencer Decl. Exs. A & B; *see also* Fischer Decl. ¶ 7)  Those other agreements similarly define, in the same paragraph, Company or Companies (depending on how many employment contracts the departing executive had) to include "any affiliates".  Likewise, those agreements contain releases by the Company (or Companies) in the same form as that given to Mr. Fisher.  This consistent practice by RSL further supports the parties' intent to have all affiliates release their claims in negotiated separations such as that of Mr. Fisher.  *E.g., Faulkner v. National Geographic Soc.*, 452 F. Supp. 2d 369, 381 (S.D.N.Y. 2006) (granting partial summary judgment when course of dealing supported party's interpretation of ambiguous term).

In sum, any made-for-litigation contention by Plc that it is not bound by the release is further undercut by the undisputed extrinsic evidence of the parties' intent in August 2000.  For this additional reason, should the Court choose to consider such evidence, it should grant summary judgment to Mr. Fisher.

III.   **THE PARTICULAR CHARACTERISTICS OF PLC AND ITS RELATIONSHIP WITH LTD. FURTHER SUPPORT SUMMARY JUDGMENT.**

Plc contends that the Separation Agreement was neither executed by any representative of Plc nor formally approved in a meeting by the Plc Board, and that such failures are fatal to Mr. Fisher's defense of release.  (Letter dated October 31, 2007 from plaintiff's counsel to the Court)  Plc is wrong.

14

FILED UNDER SEAL

*First,* the Separation Agreement was executed by Ltd. on behalf of Plc and its other affiliates. The record is undisputed that all of Plc's limited business functions were controlled and managed by Ltd. directors or officers. Plc had no employees, no operations and no offices of its own. Its funds were disbursed by Ltd. management. Its shares were wholly-owned by Ltd., and its directors were selected by Ltd. Assuming for the moment that, analytically, Plc and Ltd. were separate entities with distinct interests in August 2000 (and, again, for the reasons set forth in Defendants' Brief at Sections I.B and I.D.1 no such distinct interests then existed), through its historical reliance upon Ltd. to conduct its limited business functions, Plc imbued Ltd. directors and senior management with actual or apparent authority to enter into the Separation Agreement on its behalf. *E.g., Banko Co., Ltd. v. Starrett Housing Corp.,* No. 90 Civ. 2178, 1991 WL 220958, at **3-4 (S.D.N.Y. Oct. 15, 1991) (officer and director had apparent authority to bind corporation to release where he had signed similar contracts in past); *People Express Pilot Merger Comm. v. Texas Air Corp.,* No. 87-1155, 1987 WL 18450, at *4 (D.N.J. Oct. 14, 1987) (corporate parents had apparent authority of subsidiaries due to overlapping directors, managers, and employees); *see also Xtria, supra* Section I.B, 2007 WL 2719884; *Hirsch, supra* Section I.B, 414 N.Y.S.2d at 327.[8]

*Second,* in the alternative, should the Court agree with Plc that, upon insolvency, Plc directors had a duty to formally meet separately from Ltd. to consider Plc's interests and those of its creditors in August 2000 (and, for the reasons set forth in Def. Br. Argument Section I, they did not), the undisputed failure of the Plc directors to conduct such formal meetings as a separate exercise from their conduct at the Ltd. level—along with the other facts set forth above—

---

[8] Agency and authority can be created or evidenced by conduct or omissions. *See Trustees of the Am. Fed'n of Musicians and Employers' Pension Fund v. Steven Scott Enters.,* 40 F. Supp. 2d 503, 510-11 (S.D.N.Y. 1999) (plaintiff estopped from denying agent's authority due to past conduct).

**FILED UNDER SEAL**

suggest that Plc is bound to the Separation Agreement's release under a theory of reverse veil-piercing. Reverse veil-piercing is an exception to the general respect for corporate separateness whereby a subsidiary is bound to obligations undertaken by a parent. *See, e.g., Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 323-24 (S.D.N.Y. Bankr. 1999) (reverse veil piercing applicable due to parent's control, overlapping directors and officers, same telephone line, same office space, co-mingling of funds, and affiliate's lack of separate operations and reliance on parent to function); *see also In re Mid-West Metal Products, Inc.,* 13 B.R. 562, 567 (D. Kan. Bankr. 1981) (subsidiary liable on parent's contractual obligation under reverse veil piercing).

As set forth above (Fact Section B), there is no question that there was the requisite control relationship—the necessary link for reverse veil-piercing (as opposed to the "domination" required in veil piercing)—between Ltd. and Plc. *See Securities Investor Protection Corp.,* 234 B.R. at 323-26. That is, the limited functions of Plc were managed and directed by Plc directors at the Ltd. level: Ltd. selected the members of the Plc Board, including Mr. Fisher and his successor, Mr. Domorski; Plc had no offices, employees or operations of its own; the funds it raised were expressly disclosed to be for the benefit of Ltd. and the RSL Group, and were co-mingled together with Ltd.'s funds and disbursed by Ltd; and Plc's notes were guaranteed by Ltd. In short, Ltd.'s directors and officers called the shots for Plc in their capacity as Ltd. fiduciaries—as even plaintiff's current counsel, while representing Plc's outside creditors, recognized by dealing only with Ltd. and its advisors as opposed to Plc. The testimony is consistent that in August 2000, RSL's representatives and creditors considered the interests of Ltd. and Plc to be one and the same. It would be unjust and unfair for Plc to now seek a benefit in litigation from proffered corporate separateness when, at the time the Separation Agreement

FILED UNDER SEAL

was executed, Ltd. and Plc shared the same interests.  Accordingly, Plc was bound to the

Separation Agreement executed and approved by Ltd. under the alternative theory of reverse

veil-piercing.

## IV.   PLC'S CLAIMS AGAINST MR. FISHER ARE INCONSISTENT WITH CONSIDERATIONS OF FAIRNESS AND EQUITY.

As stated above, the Court should not interpret an agreement in a manner that would

result in "an absurdity, an injustice or have an inequitable or unusual result." *See Natwest USA,*

858 F. Supp. at 413.  Construing the Separation Agreement against Mr. Fisher to deny him the

defense of release, when the undisputed evidence reveals that the parties intended Plc—and all

other RSL affiliates—to be bound thereby, would be precisely the inequitable, unjust or unusual

result the Court should avoid.  Mr. Fisher is seeking only to hold Plc to the benefit of the bargain

he reached in good faith in August 2000.

There can be no question that Ltd. released any claims it had concerning Mr. Fisher's

conduct as an Ltd. employee and director, but also concerning his conduct as a *Plc* director, as

such position was "an affiliation" between Mr. Fisher and Ltd. by virtue of Ltd.'s request that he

serve Plc in that role.  It would be unfair and unjust—and inconsistent with the "Companies'"

obligation not to assist any other entity in bringing claims against Mr. Fisher—to determine that

Ltd. released its claims against him as a Plc director but Plc did not do so.

For this reason, courts will not permit a subsidiary to breach a contract entered into by a

parent. *E.g., Xtria,* 2007 WL 2719884, at *13 (defendant sued by non-signatory subsidiary had

defense of release or redress against parent for failure to prevent subsidiary from bringing claim).

As a New York court has confirmed, "A court of equity will not permit a wholly owned

subsidiary unconscionably or wantonly to commit violations of agreements formerly entered into

by its parent." *Madison Pictures v. Pictorial Films,* 6 Misc.2d 302, 311, 151 N.Y.S.2d 95, 105

**FILED UNDER SEAL**

(Sup. Ct. N.Y. Co. 1956) (holding subsidiary liable for breach of parent's contract with plaintiff). Plc should not be able to gain a tactical litigation advantage here due to any purported oversights of RSL in the drafting or approval of the Separation Agreement in the face of consistent evidence that Plc was intended to be bound.[9]

Interpreting the release as the parties intended in 2000 would not result in any unfairness Plc. For example, any assertion by Plc that binding it to the release would unfairly deprive it of its rights to recover from a former director whom it alleges was derelict in his fiduciary duties must be rejected. Plc deliberately declined to name Nir Tarlovsky, also a Plc director, as a defendant here, mostly likely to preserve diversity jurisdiction (both he and Plc would be considered non-US residents for diversity purposes), and thus already has effectively released its claims against one such director.

## V.   PLC BREACHED THE RELEASE BY INSTITUTING THIS LAWSUIT, AND MR. FISHER IS ENTITLED TO SUMMARY JUDGMENT ON HIS COUNTERCLAIM.

Under New York law, the Court should grant summary judgment where no material disputed facts exist concerning the elements of a breach of contract claim. Here, the only disputed element of Mr. Fisher's contract counterclaim is, as a matter of law, whether a binding contract existed between him and Plc.[10] For the reasons and based on the authority set forth above, a binding contract did exist between Mr. Fisher and Plc, and the filing of this action

---

[9] In Section 5.05(i) of the Separation Agreement, Mr. Fisher obtained representations that "All corporate action on the part of the Companies and its officers, directors and shareholders necessary for the authorization, execution, delivery and performance by the Companies of this Agreement and the performance of all the Companies' obligations hereunder has been taken." If Plc maintains that any additional steps were required to effect Plc's release and failed to occur, the consequence of that failure must be borne by Plc, not Mr. Fisher.

[10] The four elements of a breach of contract claim are: "the making of a contract; performance of the contract by the plaintiff; breach of the contract by the defendant; and damages suffered by the plaintiff." *Fabry's S.R.L. v. IFT Intern., Inc.*, No. 02 Civ. 9855, 2003 WL 21203405, at *3 (S.D.N.Y. May 21, 2003) (granting summary judgment on the element of validity).

**FILED UNDER SEAL**

violates Section 5.02 of the Separation Agreement.  In incurring substantial legal fees in defending Plc's claims against him, Mr. Fisher has suffered damages arising out of Plc's breaches.  (Fisher Decl. ¶ 14)  As a matter of law, the Court should grant him summary judgment on liability and, if necessary, hold an inquest on damages.[11]

## Conclusion

For the reasons set forth above and in Defendants' Brief, the Court should award summary judgment to Mr. Fisher dismissing Plc's complaint and all claims therein against him with prejudice, and in his favor on his counterclaim for breach of contract, and order such other relief as may be just and proper.

Dated: New York, New York
      November 29, 2007

DEWEY PEGNO & KRAMARSKY LLP

By _____
    Keara A. Bergin (KB-0831)
    Thomas E.L. Dewey (TD-6243)

220 East 42nd Street
New York, NY 10017
(212) 943-9000
(212) 943-4325 (facsimile)

*Co-counsel for defendant Itzhak Fisher*

---

[11] Plc's asserted defenses of laches and waiver cannot defeat summary judgment.  There has been (and can be) no showing of the prejudice requisite for laches.  *Newbro v. Freed*, 409 F. Supp. 2d 386, 398-99 (S.D.N.Y. 2006) (dismissing laches defense for lack of prejudice).  Similarly, Mr. Fisher never clearly, unmistakably or intentionally relinquished his release defense (Fisher Decl. ¶ 13); therefore waiver is inapplicable.  *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 499 (S.D.N.Y. 2005) (dismissing waiver defense on summary judgment).

## CERTIFICATE OF SERVICE

I, Kamani Singh, hereby certify:

I am over the age of eighteen years, not a party to this action, and an employee of the firm of Dewey Pegno & Kramarsky LLP, co-counsel for Defendant Itzhak Fisher.  On the 29th day of November 2007, I caused to be served copies of the within **Memorandum in Support of Itzhak Fisher's Motion for Summary Judgment** by hand delivery upon counsel of record for the parties to this action at the follow addresses:

John H. Bae, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

John S. Kiernan
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2007.

_____
Kamani Singh