ORIGINAL

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
John H. Bae (JB 4792)
Ingrid Bagby (IB 3844)
Adam C. Dembrow (AD 2142)

Attorneys for Plaintiff, RSL Communications Plc

**FILED UNDER SEAL**

Contains Confidential and
Highly Confidential Information
Subject to Protective Order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RSL COMMUNICATIONS PLC, by
Michael John Andrew Jervis and Steven Anthony Pearson,
as the Joint Administrators,

               Plaintiff,

    -against-

NESIM BILDIRICI, PAUL DOMORSKI,
ITZHAK FISHER, RONALD S. LAUDER,
STEVEN SCHIFFMAN, JACOB SCHUSTER
and EUGENE SEKULOW,

               Defendants.

04 Civ. 5217 (RJS) (AJP)

---

MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF RSL COMMUNICATIONS PLC
<u>FOR PARTIAL SUMMARY JUDGMENT</u>

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................4

PROCEDURAL HISTORY.............................................................................11

ARGUMENT .................................................................................................11

POINT I.

    STANDARD FOR SUMMARY JUDGMENT ...............................................11

POINT II.

    THE DEFENDANTS OWED FIDUCIARY DUTIES TO RSL PLC AND
ITS CREDITORS AND BREACHED THOSE DUTIES ..................................12

    A.    The Defendants Owed Fiduciary Duties To RSL Plc...........................13

    B.    The Defendants Owed Fiduciary Duties To RSL Plc's Creditors .........15

    C.    The Defendants' Complete Failure To Meet And Consider The Interests of
RSL PLC Constitutes A Breach Of Their Fiduciary Duties ..................17

    D.    The Defendants Have No Defense To Summary Judgment On Liability ............22

        1.    The Defendants are not protected by the business judgment rule. ...........22

        2.    The Defendants could not fulfill their duties to RSL Plc by acting
for RSL Ltd. .......................................................................22

        3.    The Defendants could not and did not fulfill their duties to RSL Plc
by acting informally. .........................................................26

POINT III.

    THE DEFENDANTS' INACTION WAS A SUBSTANTIAL FACTOR IN
CAUSING THE DAMAGES SUFFERED BY RSL PLC AND ITS CREDITORS ........28

    A.    Causation is an Appropriate Matter for Summary Judgment ................28

    B.    The Substantial Factor Test is the Correct Standard to Apply in This Case..........29

CONCLUSION..............................................................................................34

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
  722 F.2d 988 (2d Cir. 1983)..............................................................................30

*Alpert v. 28 Williams St. Corp.*,
  63 N.Y.2d 557 (1984) ......................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................. 11-12

*Arizona v. California*,
  460 U.S. 605 (1983).........................................................................................25

*Barnes v. All American Investing Co.*,
  206 A.D. 631, 198 N.Y.S. 900 (2d Dep't 1923) ...........................................21

*Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*,
  No. 03 Civ. 0377 (NRB), 2003 U.S. Dist. LEXIS 13197 (S.D.N.Y. July 30, 2003)...............25

*Beck v. Levering*,
  947 F.2d 639 (2d Cir. 1991).............................................................................12

*Binder & Binder PC v. Barnhart, Commissioner of the Social Security Administration*,
  481 F.3d 141 (2d Cir. 2007)..............................................................................11

*Boyle v. Petrie Stores Corp.*,
  136 Misc. 2d 380, 518 N.Y.S.2d 854 (Sup. Ct. 1985) .................................27

*Derdiarian v. Felix Contracting Corp.*,
  51 N.Y.2d 308 (1980) .....................................................................................28

*Diamond v. Oreamuno*,
  24 N.Y.2d 494 (1969) .....................................................................................30

*Douglas Dev. Corp. v. Carillo*,
  64 N.Y.S.2d 747 (Sup. Ct. 1946).....................................................................26

*Duane Jones Co. v. Burke*,
  306 N.Y. 172 (1954) ........................................................................................29

*Estate of Re v. Kornstein Veisz & Wexler*,
  958 F. Supp. 907 (S.D.N.Y. 1997) .................................................................30

**PAGE(S)**

*Evvtex Co. v. Hartley Cooper Assocs. Ltd.,*
    102 F.3d 1327 (2d Cir. 1996)................................................................30

*FDIC v. Nat'l Union Fire Ins. Co.,*
    205 F.3d 66 (2d Cir. 2000)........................................................29, 30, 32

*First Cent. Fin. Corp. v. Simon (In re First Cent. Fin. Corp.,*
    269 B.R. 502 (Bankr. E.D.N.Y. 2001)....................................................24

*Fisher v. Reich,*
    No. 92 Civ. 4158 (MBM), 1994 U.S. Dist. LEXIS 17121 (S.D.N.Y. Dec. 1, 1994) .............33

*Foley v. D'Agostino,*
    21 A.D.2d 60, 248 N.Y.S.2d 121 (1st Dep't 1964) ...............................13

*Forum Ins. Co. v. Zeitman,*
    No. 91 Civ. 7980 (LLS), 1995 U.S. Dist. LEXIS 13229 (S.D.N.Y. Sept. 12, 1995) ..29, 30, 31

*Francis v. United Jersey Bank,*
    87 N.J. 15, 432 A.2d 814 (1981)........................................................14, 21

*Gil v. National R.R. Passenger Corp.,*
    No. 02-CV-2687, 2007 WL 2230176 (E.D.N.Y. Aug. 1, 2007) ............................28

*Goldenberg v. Bartell Broadcasting Corp.,*
    47 Misc. 2d 105, 262 N.Y.S.2d 274 (Sup. Ct. June 4, 1965)........................32

*Hallinan v. Republic Bank & Trust Co.,*
    No. 06 Civ. 185, 2007 U.S. Dist. LEXIS 65821 (S.D.N.Y. Sept. 7, 2007) ...........15

*Hanson Trust PLC v. ML SCM Acquisition, Inc.,*
    781 F.2d 264 (2d Cir. 1986)........................................................13, 14

*Higgins v. New York Stock Exch., Inc.,*
    10 Misc. 3d 257, 806 N.Y.S.2d 339 (N.Y. Sup. Ct. 2005) ..........................13

*In re Colonial Realty Co.,*
    209 B.R. 819 (Bankr. D. Conn. 1997) ..................................................16

*In re Dark Horse Tavern,*
    189 B.R. 576 (Bankr. N.D.N.Y. 1995) ..................................................32

*In re Northern Telecom Ltd. Secs. Litig.,*
    42 F. Supp. 2d 234 (S.D.N.Y. 1998)....................................................26

*L-3 Commc'ns Corp. v. OSI Sys, Inc.,*
    No. 02-CV-9144 (PAC), 2006 U.S. Dist. LEXIS 19686 (S.D.N.Y. Apr. 11, 2006) ...............26

PAGE(S)

*Leach v. Central Fish Co.,*
    117 A.D. 77, 101 N.Y.S. 1108 (1st Dep't 907) .......................................................14

*Lirosi v. Elkins,*
    89 A.D.2d 903, 453 N.Y.S.2d 718 (2d Dep't 1982)..............................................13

*Liss v. Smith,*
    991 F. Supp. 278 (S.D.N.Y. 1998) .......................................................................12

*Lollipop, Inc.,*
    205 B.R. 682 (Bankr. E.D.N.Y. 1997).................................................................15

*Macnish-Lenox, LLC v. Simpson,*
    No. 26021/04, 2007 WL 3086028 (N.Y. Sup. Ct. Oct. 23, 2007) ...........................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)..............................................................................................12

*Milbank, Tweed, Hadley & McCloy v. Boon,*
    13 F.3d 537 (2d Cir. 1994)....................................................................................32

*New York City Dep't of Fin. v. Twin Rivers, Inc.,*
    1997 U.S. Dist. LEXIS 7735 (S.D.N.Y. June 4, 1997)........................................25

*Nobel Ins. Co. v. City of New York,*
    2006 U.S. Dist. LEXIS 70816 (S.D.N.Y. Sept. 29, 2006).....................................26

*Northwestern Nat'l Ins. Co. v. Alberts,*
    769 F. Supp. 498 (S.D.N.Y. 1991) .......................................................................31

*Official Comm. of Unsecured Creds. of RSL COM Primecall, Inc. v. Beckoff (In re RSL
    COM Primecall, Inc.),*
    Adv. No. 03-2176 (ALG), 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003)........... 22-23

*People of the State of New York v. H & R Block, Inc.,*
    16 Misc. 3d 1124A, Slip Op., 2007 WL 2330924 (N.Y. Sup. Ct. July 9, 2007) ....................30

*Pereira v. Cogan,*
    No. 00 CIV. 619 (RWS), 2001 WL 243537 (S.D.N.Y. March 8, 2001) ..........................14, 21

*RSL Communications PLC v. Bildirici,*
    No. 04-CV-5217, 2006 U.S. Dist. LEXIS 67548 (S.D.N.Y. Sept. 14, 2006).................. passim

*S&L Vitamins, Inc. v. Australian Gold, Inc.,*
    No. 05-CV-1217 (JS)(MLO), 2007 U.S. Dist. LEXIS 74712 (E.D.N.Y. Sept. 30,
    2007) ....................................................................................................................11

**PAGE(S)**

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,*
    234 B.R. 293 (Bankr. S.D.N.Y. 1999)..................................................................13

*Spanos v. Boschen,*
    61 A.D.2d 837, 402 N.Y.S.2d 423 (2d Dep't 1978)..............................................27

*Tri-Bullion Smelting & Dev. Co. v. Corliss,*
    186 A.D. 613, 174 N.Y.S. 830 (1st Dep't 1919) .................................................17

*Twenty First Century L.P. I. v. LaBianca,*
    19 F. Supp. 2d 35 (E.D.N.Y. 1998) ....................................................................29

*Weiss/Watson, Inc. v. Lange,*
    No. 87 Civ. 0032 (JFK), 1990 U.S. Dist. LEXIS 3065 (S.D.N.Y. Mar. 20, 1990) .................29

*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000)............................................................................11, 12

*Williams v. Port Auth.,*
    247 A.D.2d 296, 669 N.Y.S.2d 285 (1st Dep't 1998) ...........................................16

*Williams v. Smith,*
    781 F.2d 319 (2d Cir. 1986)................................................................................12

**PAGE(S)**

**STATUTES & OTHER AUTHORITIES:**

Bus. Corp. Law §
    708(a) ..............................................................................................................26
    708(b) ..............................................................................................................21
    717(a) ..............................................................................................................13

N.Y. PATTERN JURY INSTRUCTION (2002) ..............................................................30

Black's Law Dictionary (8th ed. 2004)..................................................................30

American Law Institute, *Principles of Corporate Governance: Analysis and
    Recommendations*, § 401 at 155 (1994)..............................................................14

Plaintiff RSL Communications Plc ("RSL Plc" or "Plaintiff"), by Steven Anthony Pearson and Michael John Andrew Jervis as joint administrators, submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment on the issues of liability and causation.

## PRELIMINARY STATEMENT

In mid-2000, the Plaintiff, RSL Plc, held significant cash and was a holding company for numerous valuable operating telecommunications companies located in Europe and North America having a collective value of approximately $1 billion. RSL Plc also was the issuer of bonds through which it borrowed $1.4 billion from institutional investors. Less than one year later, RSL Plc commenced an insolvency proceeding in the United Kingdom, with virtually no cash and with no significant assets with which to repay the $1.4 billion it borrowed. Today, the holders of the $1.4 billion in bonds will receive virtually no recovery on these bonds.

The seven defendants in this action, Nesim Bildirici, Paul Domorski, Itzhak Fisher, Ronald S. Lauder, Steven Schiffman, Jacob Schuster and Eugene Sekulow ("Defendants"), were the former directors of RSL Plc. These Defendants indisputably owed fiduciary duties to RSL Plc, and once the company entered the "zone of insolvency," they owed fiduciary duties to RSL Plc's creditors. The Plaintiff brought this action against these Defendants because the Defendants, as fiduciaries for RSL Plc and its creditors, had a duty to take appropriate action to preserve the value of RSL Plc's assets in the year 2000. These Defendants, however, took no action whatsoever for the benefit of RSL Plc or its creditors.

These Defendants were fully aware that the long term business plan of RSL Plc, its parent company RSL Communications, Ltd., and all their subsidiaries (collectively, the "RSL Group") was premised on the RSL Group's ability to raise capital through sales of "non-core"

assets and through the financial markets.  Indeed, the offering memorandum that accompanied a $200 million bond issuance in February 2000 expressly stated that the RSL Group's inability to raise cash would harm the RSL Group's ability to operate, and prevent RSL Plc from being able to repay the bond debt.  By mid-2000, the Defendants were fully aware that the RSL Group's efforts to raise cash through the sale of "non-core" assets had failed, and that the RSL Group was not able to obtain new financings or equity investments.  They also were confronted with the fact that the RSL Group would run out of cash by November 2000.

Thus, the Defendants knew by mid-2000 that the very warnings contained in the offering memorandum had come to reality, and that the RSL Group's ability to continue to operate and to repay the $1.4 billion RSL Plc borrowed had been compromised. Notwithstanding these facts, the Defendants took no action whatsoever as the board of directors of RSL Plc to preserve and maximize RSL Plc's cash and its valuable operating subsidiaries. Indeed, before the commencement of this action, Defendant Nesim Bildirici testified during an examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure that the Defendants never participated in a meeting of the board of directors of RSL Plc, and that "PLC meant nothing to me as an – as a director or as an employee of RSL."

On July 2, 2004, RSL Plc, through the joint administrators, commenced this action against the Defendants for their breach of fiduciary duties owed to RSL Plc and its creditors.  The Defendants moved to dismiss the Complaint, asserting that they were protected by the business judgment rule, and that they had fulfilled their duties to RSL Plc and its creditors by acting as directors and officers for RSL Plc's parent company, RSL Ltd.  This Court denied the motion to dismiss, holding that the business judgment rule defense is not available where the Defendants exercised no judgment with respect to RSL Plc, and that the Defendants may not

fulfill their fiduciary duties to RSL Plc or its creditors by acting as directors or officers of RSL Ltd.

Following the Court's decision, the parties spent over a year completing fact and expert discovery. After the exchange of thousands of pages of documents and the depositions of eighteen fact witnesses, every critical fact alleged in the Complaint has been proven true. Each of the seven Defendants admitted at his deposition that he never participated in a meeting of the board of directors of RSL Plc to consider the interests of RSL Plc or its creditors. The only purported meetings they participated in were as directors of RSL Ltd., which owed no fiduciary duty to RSL Plc or its creditors.

It is beyond dispute that as directors, the Defendants owed fiduciary duties to RSL Plc under the laws of New York. The Defendants also owed duties to RSL Plc's creditors, because RSL Plc began to operate in the "zone of insolvency" by no later than May 2000 -- a fact which the Defendants cannot dispute. As a matter of law, the Defendants' failure to hold meetings as directors of RSL Plc to consider the separate interests of RSL Plc, and to take action as a board to preserve RSL Plc's cash and the value of its operating subsidiaries constituted a breach of their fiduciary duties to RSL Plc and its creditors. Thus, based on indisputable facts and uncontroverted legal authorities, the Court should grant partial summary judgment with respect to liability based on the Defendants' breach of their fiduciary duties owed to RSL Plc and its creditors.

Additionally, based on indisputable facts and the standard on causation adopted by this Court, the Court should find that the Defendants' breach of their fiduciary duties caused damages to RSL Plc and its creditors. This Court has ruled that the appropriate standard for causation in this case is whether the Defendants' inaction was a "substantial factor" in causing damages to RSL Plc and its creditors. It is an undisputed fact that in 2000, RSL Plc had no

employees, such that the Defendants necessarily were the only fiduciaries with duties owing to RSL Plc who could have taken action on its and its creditors' behalf. It is also indisputable that the cash RSL Plc held in May and June 2000 was not preserved and the operating subsidiaries ultimately became worthless. Based on these facts, there can be no dispute that the Defendants' complete failure to take any action as directors of RSL Plc was a "substantial factor" in causing damages – the dissipation of RSL Plc's cash and the loss in value of its subsidiaries – to RSL Plc and its creditors. The Court should grant partial summary judgment on the issue of causation.

<u>STATEMENT OF FACTS</u>

<u>RSL Plc and its Public Debt</u>

Plaintiff RSL Plc was incorporated in the United Kingdom in 1996 as a company limited by shares under the English Companies Act 1985. Statement of Uncontested Material Facts in Support of Plaintiff RSL Communications Plc's Motion for Partial Summary Judgment ("Statement") at ¶ 1. RSL Plc was a direct subsidiary of RSL Ltd., and a holding company for operating subsidiaries in Europe and North America. *Id.* at ¶¶ 3, 5. Defendants Nesim Bildirici, Ronald S. Lauder, Jacob Schuster and Eugene Sekulow were directors of RSL Plc for all of the year 2000. *Id.* at ¶ 8. Defendant Itzhak Fisher was a director of RSL Plc during the period of January 1, 2000 to August 21, 2000. *Id.* at ¶ 9. Defendant Steven Schiffman was a director of RSL Plc during the period of August 29, 2000 to December 31, 2000. *Id.* at ¶ 10. Defendant Paul Domorski was a director of RSL Plc during the period of August 19, 2000 to December 31, 2000. *Id.* at ¶ 11.

RSL Plc functioned as a financing vehicle that raised money used to fund the entire RSL Group. *Id.* at ¶ 6. As of January 31, 2000, RSL Plc had $1.2 billion of public bond debt outstanding. *Id.* at ¶ 12. RSL Ltd.'s management and board of directors determined that the

4

RSL Group required additional funding, in part to support the group's strategy of growth by the continued acquisition of telecommunications companies around the world. Indeed, this was a strategy that the RSL Group would pursue for most of the year 2000. In February 2000, RSL Plc issued an additional $100 million and €100 million in public bonds (the "February 2000 Bonds"). *Id.* at ¶ 13. The February 2000 Bonds were guaranteed by RSL Ltd. and by an indirect subsidiary of RSL Ltd., RSL COM U.S.A., Inc. *Id.*

The offering memorandum for the February 2000 Bonds recognized the precarious nature of the RSL Group's liquidity. That offering memorandum stated that:

> We have generated net losses of $615.9 million from our inception through September 30, 1999. We have also incurred losses from operations since inception. . . . We expect to incur significant net losses through 2001 due to our need to expand our operations, develop RSL-NET and build our customer base and marketing operations, and as a result of the interest expense on our outstanding indebtedness. Significant net losses and negative cash flow from operations may continue beyond 2001.

Declaration of Adam C. Dembrow in Support of Motion of RSL Communications Plc for Partial Summary Judgment ("Dembrow Decl."), Exhibit O at RSL PLC 594.

The offering memorandum for the February 2000 Bonds also contained a statement that if RSL Ltd. and the RSL Group "fail[ed] to obtain additional capital on acceptable terms, we may be required to reduce our capital and operating expenditures, which would likely negatively impact our business, result of operations and financial condition, and our ability to pay interest on or repay our existing obligations, including our ability to pay principal of and interest on the notes." *Id.* at RSL PLC 595.

Significant Events Following RSL Plc's February 2000 Debt Issuance

In March 2000, RSL Ltd. produced a business plan (the "March Business Plan") for the period from 1999 to 2004. Statement at ¶ 17. The March Business Plan provided that

going forward, the RSL Group would focus on its operations in Europe and North America, and that all other operations were deemed "non-core." *Id.* The March Business Plan stated that some or all of these non-core assets would be monetized. *Id.* In particular, the March 2000 Business Plan anticipated that the RSL Group would receive net proceeds of $200 million from the initial public offering ("IPO") of RSL COM Australia, which was to be completed by the end of May 2000. *Id.* Further, the March Business Plan stated that "with the monetization of non-core assets during the plan period (including RSL COM Australia, deltathree.com and RSL COM Latin America, but excluding Telegate), we are able to fully fund this [business plan] base case." *Id.*

The concerns expressed in the offering memorandum became realities. In the second quarter of 2000, conditions in the global telecommunications market began to decline. *Id.* at ¶ 19. During this same period, the overall capital markets also declined and investors became less receptive to investing in telecommunications companies. *Id.* Then, on May 24, 2000, the RSL Group announced that its anticipated IPO of RSL COM Australia was being delayed because of market conditions. *Id.* at ¶ 20. The IPO never resumed, although efforts subsequently were made to sell RSL COM Australia. *Id.* After the IPO was postponed, RSL Ltd. received at least one offer for the purchase of RSL COM Australia, but that offer was not accepted. *Id.* Ultimately, no sale of RSL COM Australia was ever consummated during the year 2000. *Id.*

On May 25, 2000, one day after the announced delay of the IPO of RSL COM Australia, members of RSL Ltd.'s management, including Defendants Itzhak Fisher and Steven Schiffman, participated in a meeting with representatives of Goldman Sachs & Co. ("Goldman Sachs"), an advisor to the RSL Group. *Id.* at ¶ 21. The subject of the meeting was the financial condition and future financing needs of the group. *Id.* At that meeting, the representatives of RSL Ltd.'s management stated that unless the RSL Group promptly raises $300 million through

a private placement, RSL Ltd. "is scheduled to run out of cash in November of this year *assuming* reduced capital expenditures." *Id.* at GS/Bildirici 19007 (emphasis added). Notwithstanding the delay of the Australian IPO, and the RSL Group's impending liquidity crisis, during all of the year 2000 the RSL Plc board held no meetings to evaluate the declining financial condition of the RSL Group and the telecommunications market in general, and took no actions as a board.  Statement at ¶ 40, 41, 43.  At this time, RSL Plc had $1.4 billion of public bond debt outstanding.

By mid-2000, RSL Ltd. determined that a contemplated IPO of the shares in the RSL Group's Spanish subsidiary ("RSL Spain") was being delayed. *Id.* at ¶ 22.  Subsequently, during the period from March to October 2000, RSL Ltd. received at least one offer to purchase RSL Spain, but that offer was not accepted.  *Id.*  No IPO or sale of RSL Spain was ever consummated during the year 2000.  *Id.*  Notwithstanding these significant developments with respect to one of RSL Plc's valuable operating subsidiaries, the RSL Plc board never held a meeting to discuss what impact these developments may have on it or its creditors, or what actions, if any, RSL Plc should take in response. *Id.* at ¶¶ 40, 41, 43.  The RSL Plc board was required to consider the interests of RSL Plc's creditors, because by May of 2000, RSL Plc was operating in the zone of insolvency.  Affidavit of Steven G. Panagos, dated November 28, 2007 ("Panagos Aff.") at ¶ 6.

On June 8, 2000, Goldman Sachs provided to members of RSL Ltd.'s management a report stating that RSL Ltd. would run out of money by November 2000, and that limited financing options were available to remedy this liquidity crisis (the "GS June Report"). Statement at ¶ 23.  The GS June Report stated that RSL Ltd. could take certain actions to raise needed financing, including obtaining a private equity investment, selling or merging the entire company with another, or monetizing the RSL Group's interests in certain operating subsidiaries

in Australia, Spain or Finland. *Id.* Notwithstanding this liquidity crisis, the RSL Plc board did not hold a meeting to discuss what actions, if any, RSL Plc should take. Statement at ¶¶ 40, 41, 43.

With no other financing alternatives readily available, in July, 2000, RSL Plc became the obligor on a $100 million loan facility provided by Defendant Ronald S. Lauder (the "Lauder Loan"). *Id.* at ¶ 24. The terms of the Lauder Loan provided Mr. Lauder with a 1% arrangement fee, a draw-down fee of 1% and a commitment fee of 1% per annum on the undrawn balance of the loan. *Id.* The interest rate for the Lauder Loan was set at the 30-day LIBOR rate plus 4.5%. *Id.* Notwithstanding that the Lauder Loan added further debt to RSL Plc, which already had a debt burden of $1.4 billion, the RSL Plc board did not hold a meeting to discuss or approve the Lauder Loan, or to discuss or approve any draw-downs on that loan, of which there were several in 2000. *Id.* at ¶¶ 40, 41, 43. The RSL Plc board likewise did not hold a meeting to discuss what impact the Lauder Loan, or any draw-downs on the Lauder Loan, would have on RSL Plc's creditors or the company's overall financial condition. *Id.*

Other than the Lauder Loan, the RSL Group was not successful in obtaining any additional financing during the period from March to December 2000. *Id.* at ¶ 39. In particular, at various times throughout the year, RSL Ltd. attempted to obtain a private equity investment from various sources. *Id.* at ¶ 33. However, no such private equity investment in RSL Ltd. or any RSL Group entity was ever obtained during the year 2000. *Id.* At no time during the period from March 1 to December 31, 2000, however, did the RSL Plc board meet to discuss the impact on RSL Plc or its creditors of the failure to obtain additional financing, or whether other methods of raising funds should be pursued, such as marketing for sale the operating subsidiaries of RSL Plc. *Id.* at ¶¶ 40, 41, 43 .

Meanwhile, during the period of June through November of 2000, the directors of RSL Ltd., some of whom (Defendants Eugene Sekulow, Ronald S. Lauder, Itzhak Fisher, and Jacob Schuster) were also directors of RSL Plc, continually were advised by RSL Ltd.'s chief financial officer, Defendant and RSL Plc director Steven Schiffman, about the declining cash position of the RSL Group. *Id.* at ¶¶ 25-29, 31, 32. Specifically, the RSL Ltd. directors were advised that the cash available to the RSL Group declined from approximately $310 million as of March of 2000 to approximately $50 million by September 30, 2000. *Id.* at ¶¶ 25, 32. The available cash declined every month but one during this period. *Id.* at ¶¶ 25-29, 31, 32. However, at no time during this period of June through November of 2000 did the RSL Plc board hold a meeting to discuss what impact this declining cash position may have on it or its creditors, or what actions, if any, RSL Plc should take to protect those interests. *Id.* at ¶¶ 40, 41, 43.

In addition to the declining cash position of the RSL Group and the group's inability to raise funds, the Defendants were confronted with other financial warning signs. Starting in March of 2000, the stock price of RSL Ltd. declined and continued to decline throughout the rest of the year. *Id.* at ¶ 18. By September 28, 2000, NASDAQ informed RSL Ltd. that its shares would be suspended from trading on the NASDAQ market as of December 29, 2000 because RSL Ltd. had been unable to maintain a share price above $5 over the last 30 trading days. *Id.* at ¶ 30. At no time during the year 2000 did the RSL Plc board meet to discuss the impact on RSL Plc or its creditors of its parent company's declining stock value, or what remedial actions, if any, should be taken by RSL Plc. *Id.* at ¶¶ 40, 41, and 43.

Moreover, at no time during the period from May through October 2000 did the RSL Plc board meet to discuss whether RSL Plc should continue funding RSL Plc's operating subsidiaries, or what measures, if any, should be taken to reduce the funding being provided to the RSL Group. *Id.* at ¶¶ 40, 41, 43.

Beginning in October of 2000, RSL Ltd. began to retain restructuring advisors. However, by that time substantial damage already had been done to the value of RSL Plc's operating subsidiaries in Europe and North America. Most of RSL Plc's operating subsidiaries had not been sold or monetized, and their values, along with conditions in the telecommunications market as a whole, had continued to decline in the fourth quarter of 2000. Declaration of Michael John Andrew Jervis, dated November 28, 2007 (the "Jervis Decl."), in Support of RSL Communications Plc's Motion for Partial Summary Judgment, at ¶ 8. Additionally, by the end of the year 2000, the cash resources available to RSL Plc and the RSL Group were virtually gone. Statement at ¶ 32.

<u>January – March 2001: The Demise of the RSL Group</u>

In January of 2001, the RSL Plc's auditors stated that RSL Plc should be considered insolvent as of December 31, 1999 based upon its draft accounts. *Id.* at ¶ 35. The RSL Plc board never held a meeting to discuss RSL Plc's financial condition or insolvency, or to deliberate upon a course of action to remedy the situation. *Id.* at ¶¶ 40, 41, 43.

On March 16, 2001, the RSL Group's U.S. operating companies filed a chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. On March 19, 2001, RSL Ltd. commenced insolvency proceedings under the laws of Bermuda. On that same day, RSL Plc filed for administration under the United Kingdom Insolvency Act 1986, and currently remains in administration. Jervis Decl. at ¶ 1. Pursuant to orders of the High Court of Justice of England and Wales, Steven Anthony Pearson and Michael John Andrew Jervis have been appointed the joint administrators of RSL Plc. *Id.*

## PROCEDURAL HISTORY

RSL Plc commenced this action on July 2, 2004, alleging that the Defendants, as former directors of RSL Plc, breached their fiduciary duties owed to RSL Plc and its creditors. In November 2004, the Defendants moved to dismiss the Complaint in this action. That motion was denied by this Court's memorandum decision, dated September 14, 2006. *See RSL Communications PLC v. Bildirici*, No. 04-CV-5217, 2006 U.S. Dist. LEXIS 67548, at *1 (S.D.N.Y. Sept. 14, 2006). Following the Court's decision on the motion to dismiss, the parties engaged in and completed both fact and expert discovery on October 23, 2007. Pursuant to the order of November 1, 2007, the Court authorized RSL Plc to move for partial summary judgment on the issues of whether the Defendants are liable for breaching their fiduciary duties to RSL Plc and its creditors, and whether such breaches were a substantial factor in causing damages to RSL Plc and its creditors.

## ARGUMENT

### POINT I.

### STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court should grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Binder & Binder PC v. Barnhart, Commissioner of the Social Security Administration*, 481 F.3d 141, 148 (2d Cir. 2007). "'Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *S&L Vitamins, Inc. v. Australian Gold, Inc.*, No. 05-CV-1217 (JS)(MLO), 2007 U.S. Dist. LEXIS 74712, at *9 (E.D.N.Y. Sept. 30, 2007) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247 (1986)).  Thus, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).  As the Second Circuit has stated, when a motion for summary judgment is made, it is time to 'put up or shut up.'" *Weinstock*, 224 F.3d at 41.  *See also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).  Although defendants frequently move for summary judgment, "'courts should not hesitate to grant a plaintiff's request for summary judgment when the defendant has failed to meet the requirements prescribed by Rule 56(e).'" *Liss v. Smith*, 991 F. Supp. 278, 313 (S.D.N.Y. 1998) (quoting *Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991)).

As demonstrated below, there are no genuine issues of material fact regarding whether Defendants owed a fiduciary duty to RSL Plc and its creditors, whether those duties were breached, and whether such breach was a "substantial factor" in the damages caused to RSL Plc and its creditors.  The Court should accordingly grant partial summary judgment on these issues.

## POINT II.

### THE DEFENDANTS OWED FIDUCIARY DUTIES TO RSL PLC AND ITS CREDITORS AND THEY BREACHED THOSE DUTIES

As directors of RSL Plc, the Defendants owed fiduciary duties to RSL Plc.  Once RSL Plc entered the "zone of insolvency," the Defendants' fiduciary duties extended to RSL Plc's creditors.  As demonstrated below, the uncontroverted facts and governing authorities demonstrate that the Defendants breached their fiduciary duties to RSL Plc and its creditors.  The Court should grant partial judgment that Defendants are liable to RSL Plc for breach of their fiduciary duties to RSL Plc and its creditors.

A.     The Defendants Owed Fiduciary Duties to RSL Plc

        The law of New York applies to this case. *See Bildirici*, 2006 U.S. Dist. LEXIS

67548, at *9-11.  Under New York law, a corporation's directors owe fiduciary duties, including

a duty of care, to their corporation. "The fiduciary duty of due care . . . obligates directors to act

in an informed and 'reasonably diligent' basis in 'considering material information.'" *Higgins v.*

*New York Stock Exch., Inc.*, 10 Misc. 3d 257, 283, 806 N.Y.S.2d 339, 361 (N.Y. Sup. Ct. 2005)

(citing *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 274-275 (2d Cir. 1986));

*see also Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *12-13.  "Another component of the

fiduciary's duties to the corporation is that directors are obligated to exercise all their

responsibilities . . . in good faith." *Higgins*, 10 Misc. 3d at 283, 806 N.Y.S.2d at 361 (citing

*Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 568 (1984)).[1]  The duty of care is also embodied

in section 717(a) of New York's Business Corporations Law which provides that:

> A director shall perform his duties as a director, including his duties
> as a member of any committee of the board upon which he may
> serve, in good faith and with that degree of care which an ordinarily
> prudent person in a like position would use under similar
> circumstances.

This Court has ruled that this standard governs the Defendants' fiduciary duties in this action.

*See Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *12.[2]

---

[1] Directors also owe their companies a duty of loyalty. "The fiduciary duty of loyalty imposes on
corporate directors an obligation not to 'assume and engage in the promotion of personal interests which
are incompatible with the superior interests of their corporation . . . as they [directors] owe the corporation
their undivided and unqualified loyalty." *Higgins*, 10 Misc. 3d at 278, 806 N.Y.S.2d at 357 (citing *Foley
v. D'Agostino*, 21 A.D.2d 60, 66-67, 248 N.Y.S.2d 121 (1st Dep't 1964).

[2] These fiduciary duties exist even if a corporation has limited functions or exists solely for tax purposes.
*See, e.g., Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 329-30 (Bankr.
S.D.N.Y. 1999); *Lirosi v. Elkins*, 89 A.D.2d 903, 453 N.Y.S.2d 718, 719 (2d Dep't 1982) (finding that a
director owed fiduciary duties to a "dummy corporation" that was formed to avoid union problems as well
as to the controlling corporation).

It has long been held that "[t]he duty of a director is to direct, and if he neglect this duty he is certainly guilty of a moral wrong, if not a legal one.  To perform this duty intelligently it is essential that he should keep himself informed as to the business and affairs of the corporation[.]"  *Leach v. Central Fish Co.*, 117 A.D. 77, 79, 101 N.Y.S. 1108 (1st Dep't 1907).  In other words, in fulfilling their duties, directors are required to supervise their corporations.  One court has observed that:

> [A]n important theme in recent cases has been the need for directors "to exercise reasonable supervisions and control over the policies and practices of a corporation.  The institutional integrity of a corporation depends on the proper discharge by directors of those duties."  These cases made clear that sustained patterns of inattention to obligations by directors or officers or unreasonable blindness to problems that later caused substantial harm will create exposure to liability.

*Pereira v. Cogan*, No. 00 CIV. 619 (RWS), 2001 WL 243537, at \*13 (S.D.N.Y. March 8, 2001) (citing American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations*, § 401 at 155 (1994)).  "A director is not an ornament, but an essential component of corporate governance. . . . Thus, all directors are responsible for managing the business and affairs of the corporation."  *Francis v. United Jersey Bank*, 87 N.J. 15, 34, 432 A.2d 814, 823-24 (1981).[3]  Directors are meant to oversee a corporation's operations.  "Shareholders have a right to expect that directors will exercise reasonable supervision and control over the policies and practices of a corporation.  The institutional integrity of a corporation depends upon the proper discharge by directors of those duties."  *Id.* at 824.  It is not sufficient, however, for

---

[3] Although *Francis* construed the duties of directors under New Jersey law, it is instructive in this action because the New Jersey statute concerning the duty of care owed by directors to their corporation is virtually identical to New York's duty of care statute.  *Id.* at 820-21.  In fact, the *Francis* court explicitly stated that for this very reason it was considering New York cases in making a determination as to the scope of a director's duty of care under New Jersey law.  *Id.* at 821.

directors to merely be informed about their corporations. "Once informed, '[d]irectors must exercise their honest judgment in the lawful and legitimate furtherance of corporate purposes.'" *Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *13 (citing *Hanson Trust*, 781 F.2d at 274-75).

Here, it is indisputable that the Defendants were directors of RSL Plc during the year 2000. Thus, the Defendants owed fiduciary duties to RSL Plc under New York law to manage the company's business and affairs, and to exercise reasonable supervision and control over the company, including taking appropriate action to preserve the interests of RSL Plc.

B.   The Defendants Owed Fiduciary Duties to RSL Plc's Creditors

The Defendants also owed fiduciary duties to RSL Plc's creditors for most of the year 2000. By May of 2000, RSL Plc was operating in the zone of insolvency. Plaintiff's solvency expert Steven Panagos has opined that RSL Plc was within the zone of insolvency by May of 2000 because, *inter alia*, RSL Plc's public debt was trading at a discount to par value and the company was experiencing difficulties raising capital. *See* Panagos Aff. at ¶¶ 4-7. This Court has ruled that the fiduciary duties of a corporation's directors extend to the corporation's creditors when the corporation enters the zone of insolvency. *See Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *26. As recently as September 7, 2007, this principle has been reaffirmed by this Court. *See Hallinan v. Republic Bank & Trust Co.*, No. 06 Civ. 185, 2007 U.S. Dist. LEXIS 65821, at *21, fn. 10 (S.D.N.Y. Sept. 7, 2007) (citing *Bildirici* for the proposition that duties of a corporation's directors extend to that corporation's creditors when the corporation enters the zone of insolvency).

Defendants cannot contest Mr. Panagos' expert opinion that RSL Plc was within the zone of insolvency in May 2000, because their solvency expert has failed to controvert Mr. Panagos' opinion. Where, as here, admissible expert testimony is not disputed or controverted

by opposing expert testimony, courts have granted summary judgment on the undisputed expert testimony.   For example, in *In re Lollipop, Inc.*, 205 B.R. 682 (Bankr. E.D.N.Y. 1997), the chapter 7 trustee commenced an adversary proceeding to avoid and recover funds that were alleged to have been fraudulently transferred from a principal of the debtor to the principal's wife.   *Id.* at 684.   The trustee moved for summary judgment on the fraudulent conveyance claims, relying on the affidavit of his accountant stating that the debtor was insolvent at the time of the transfers and that the debtor did not receive any consideration in exchange for the transferred funds.   *Id.* at 685.   The court granted summary judgment in favor of the trustee and held that the transfers constituted fraudulent conveyances.   *Id.* at 689.   In so holding, the court noted that the defendant "provided no information to controvert the accountant's statement" regarding the debtor's insolvency, and thus the trustee's "unchallenged proof means that there is no issue of material fact requiring a trial on the question of the Debtor's insolvency at the time of the transfers."   *Id.* at 687.

With respect to whether fair consideration was given to the debtor, the *Lollipop* court noted the defendant's silence on the issue (the defendant invoked the Fifth Amendment privilege when asked to explain the transfers), and held that, "[d]ue to the Defendant's silence on this issue in the face of a sworn affidavit, the Court finds the Trustee has sustained his burden and thus there is no triable issue of material fact as to the lack of consideration for the transfers." *Id.  See also In re Colonial Realty Co.*, 209 B.R. 819, 822 (Bankr. D. Conn. 1997) (concluding on summary judgment that debtor was insolvent based on undisputed expert testimony of accountant); *Williams v. Port Auth.*, 247 A.D.2d 296, 297, 669 N.Y.S.2d 285, 287 (1st Dep't 1998) (granting summary judgment to defendants where defendant's expert testimony that defendant's liability was an impossibility was not refuted by plaintiff).

16

Here, the Defendants cannot produce any evidence contesting the fact that RSL Plc entered the zone of insolvency by May of 2000 because their own solvency expert, Mark Hopkins, failed to opine on the zone of insolvency. *See* Dembrow Decl., Exhibit NN at 241:5-9. Moreover, at his deposition, Mr. Hopkins testified that he does not have any understanding as to what "zone of insolvency" means; consequently, he is not able to opine on this subject. *Id.* at 239. Thus, Plaintiff's expert opinion that RSL Plc was in the zone of insolvency in May 2000 is undisputed. There is no genuine issue of material fact concerning whether and when RSL Plc entered the zone of insolvency in the year 2000. The Court should find that RSL Plc was operating in the zone of insolvency as of May of 2000, and that as of that date the Defendants owed fiduciary duties to RSL Plc's creditors.

C.     The Defendants' Complete Failure to Meet and Consider the Interests
       of RSL Plc and Its Creditors Constitutes a Breach of Their Fiduciary Duties

While the Defendants had complete knowledge that RSL Plc was facing a financial crisis, they failed to take any steps as directors of RSL Plc to protect the interests of RSL Plc and its creditors in the year 2000. By failing to participate in a single meeting of the board to consider the interests of RSL Plc and its creditors and by not preserving RSL Plc's cash and the value of its operating subsidiaries, the Defendants breached their fiduciary duties to RSL Plc and its creditors.[4]

---

[4] Even in cases where directors were not accused of breaching their fiduciary duties by failing to hold board meetings, courts have stated that the failure of directors to hold board meetings constitutes corporate mismanagement. *See, e.g., Tri-Bullion Smelting & Dev. Co. v. Corliss*, 186 A.D. 613, 624, 174 N.Y.S. 830, 838 (1st Dep't 1919) (directors were held negligent for failing to hold monthly board meetings as required by the company's by-laws, and for failing obtain regular statements of the company's financial condition from the treasurer that would have given the directors an opportunity to detect an embezzlement scheme).

The Defendants never held a formal board meeting to consider the interests of RSL Plc during the year 2000.[5]  Statement at ¶ 40.  Each Defendant has testified that he did not participate in a single meeting of the RSL Plc board during the year 2000.  For example, Defendant Nesim Bildirici testified that "I must tell you, we never had a formal meeting where we discussed the PLC.  We never did that."  Dembrow Decl., Exhibit G at 41:14-16.  Similarly, Defendant Ronald Lauder was asked "Do you recall ever attending a Board of Directors meeting of RSL Communications Plc[,]" and he replied "Not to my recollection."  Id., Exhibit J at 16:10-13.  Defendant Paul Domorski testified that "If you mean how many formal board meetings [of RSL Plc] where we called everyone together, I think there were none of these."  Id., Exhibit I at 29:25-30:3.  Consistently, certain Defendants testified that no meetings of the RSL Plc board were *ever* held.  For example, when asked "So between 1996 and 2000, were there any formal board meetings of the board of directors of RSL PLC[,]" Defendant Jacob Schuster testified that "I do not recollect any board meetings of PLC in that time period."  Id., Exhibit H at 20:14-15.  Similarly, Defendant Eugene Sekulow was asked "How often did the board of directors of RSL PLC hold a meeting during year 2000[,]" and he replied "Never did."  Id., Exhibit K at 20:13.  Mr. Sekulow was then asked "Prior to year 2000, had there been meetings of the board of

---

[5] While a document purporting to be minutes of a meeting of the RSL Plc board held on August 21, 2000 was produced during discovery, the director who signed these alleged minutes, Defendant Nesim Bildirici, testified that no such meeting took place, and that he was simply asked to, and did, sign the "minutes." Statement at ¶ 43. *See also* Dembrow Decl., Exhibit B at 41:14-22, 42:10-43:8.  Another document was produced during discovery which purports to be minutes of a meeting of the Plc Board held on December 4, 2000.  However, insofar as the two RSL Plc directors allegedly present at the December 4th "meeting" (Defendants Steven Schiffman and Paul Domorski) both testified that they did not ever attend a meeting of the board of RSL Plc, it cannot be disputed that this December 4th "meeting" just like the August 21st "meeting" never took place.

directors of RSL PLC[,]" and he answered "There had never been any meetings of the board of PLC." *Id.* at 20:14-18.[6]

The Defendants' testimony is not surprising, as many of the Defendants admitted that they completely disregarded RSL Plc's existence.  For example, Mr. Bildirici testified that "We never paid attention, to be honest, [to RSL Plc] as a separate entity." *Id.*, Exhibit B at 29:10-11.  Further, Mr. Sekulow testified that "RSL PLC directors did not ever act individually as PLC directors.  We acted – those of us who were PLC directors were also Limited directors, and in that capacity, we functioned fully on behalf of the enterprise." *Id.*, Exhibit K at 74:7-12.  Mr. Lauder testified that "I don't really know what duties I had as a director [of RSL Plc in 2000].  I knew that my duties were in Ltd.  I was under the impression that the only role that Plc had was to collect the money and then all the business was done in Ltd.  I was under the impression that they were the, one and the same.  Mirror images of each other." *Id.*, Exhibit J at 14:2-9.

The failure of the RSL Plc board to meet during the year 2000 is egregious in light of the serious problems facing the RSL Group in that year—facts of which the Defendants were well aware.  As 2000 progressed, the fears contained in the offering memorandum for the February 2000 Bonds became reality -- that if the RSL Group failed to obtain additional capital on acceptable terms, the Group's financial condition would be negatively impacted and RSL Plc may not be able to repay the $1.4 billion in debt.  Statement at ¶ 15.  Following the issuance of the February 2000 Bonds, the RSL Group's efforts to raise additional capital met with failure.  The first such failure was the delay in May of 2000 of an anticipated IPO of RSL COM Australia that was expected to generate approximately $200 million. *Id.* at ¶ 20.  The delay of the

---

[6] *See also* Dembrow Decl., Exhibit M at 11:16-20; *id.*, Exhibit L at 14:5-13.

Australia IPO prompted RSL Ltd.'s management to consult with Goldman Sachs concerning its financing options. *Id.* at ¶ 21. RSL Ltd.'s management had good reason to be concerned: their own calculations suggested that they would run out of cash by November 2000. *Id.* Goldman Sachs confirmed this fear in the GS June Report, which stated, "Based on RSL's most recent projections, the Company will run out of cash with its November 2000 interest payment". Dembrow Decl., Exhibit T at RSL PLC 4027. The GS June Report also suggested that additional financing could potentially be raised by (i) obtaining a private equity investment, selling or merging the entire RSL Group with another telecom company, or (iii) selling or otherwise monetizing certain operating subsidiaries such as those in Australia, Spain, or Finland. *Id.* However, the GS June Report noted that "the immediacy of the cash need will mean dealing with financial buyers on potentially difficult and expensive terms." *Id.* No meeting of the RSL Plc board was held in response to the GS June Report. Moreover, at no time after the GS June Report did the RSL Plc board meet to consider the wisdom and progress of the financing options suggested in that report. Statement at ¶ 40.

Such consideration would have been prudent, since at no time during the year 2000 was any member of the RSL Group successful in obtaining a private equity investment. *Id.* at ¶ 33. The IPO of RSL COM Australia never resumed, nor was that subsidiary ever sold (although at least one offer was received). *Id.* at ¶ 20. Further, RSL Spain was never sold, although at least one offer for that subsidiary was received. *Id.* at ¶ 22. Finally, it appears doubtful that RSL Ltd. made any serious efforts to sell the Finnish subsidiary, which was not sold in 2000.[7] Thus, Goldman Sachs's recommendations for financing options were not

---

[7] Indeed, Defendant Nesim Bildirici testified that the Finnish subsidiary was considered a core asset, and was not marketed for sale in 2000. *See* Dembrow Decl., Exhibit G at 66:6-8.

followed in full, or were met with failure. Meanwhile, the RSL Group's financial condition only continued to worsen. RSL Ltd.'s stock price sank continually as 2000 progressed until, on September 28, 2000, RSL Ltd. was notified that its shares would be de-listed from the NASDAQ for failure to maintain a share price of $5 over the prior 30 trading days. *Id.* at ¶ 30. As November approached, the Defendants blithely ignored their duties to RSL Plc and to its creditors, and carried on business as usual.

By failing to participate in a single meeting of the RSL Plc board during the year 2000, the directors of RSL Plc missed opportunities to deliberate and act on these serious financial problems facing RSL Plc with the requisite focus on RSL Plc and its creditors. The Defendants simply failed to manage the business and affairs of RSL Plc, *see Francis*, 87 N.J. at 34, 432 A.2d at 823-24; *Pereira*, 2001 WL 243537, at *13, and they failed to exercise reasonable supervision and control over the policies and practices of RSL Plc. *See Francis*, 87 N.J. at 34, 432 A.2d at 824. Their candid admission that they took no action whatsoever to protect the interests of RSL Plc and its creditors constitute an admission that they breached their fiduciary duties to RSL Plc and its creditors. The Court should grant partial summary judgment that the Defendants breached their fiduciary duties to RSL Plc and its creditors.[8]

---

[8] The Defendants may contend that they acted once in February 2000 as the RSL Plc board through a unanimous written consent. Under certain limited circumstances, a board of directors may effect an action by executing a unanimous written consent. *See* New York Business Corporation Law § 708(b). However, a single action in the year 2000 is insufficient to fulfill the Defendants' fiduciary duties. Moreover, the consent was executed without any deliberation by the Plc Board, as Defendant Nesim Bildirici testified that he was simply handed a signature page and told to sign it. He could not remember whether he was given the substantive pages of the consent Dembrow Decl., Exhibit B at 42:15-43:20. The simple existence of a unanimous written consent does not necessarily indicate that a proper corporate action has taken place; some collective action by the board as a board is required. *See, e.g., Barnes v. All American Investing Co.,* 206 A.D. 631, 198 N.Y.S. 900 (2d Dep't 1923) ("The alleged certified copy resolution . . . was false in fact. No such meeting as that recited therein had been held, and, therefore, no such resolution adopted, nor could it become an order of the board of directors by the separate consent of each director not acting collectively as a board") (citation omitted).

D.      The Defendants Have No Defense to Summary Judgment on Their Liability

      1.      The Defendants are not protected by the business judgment rule.

Because the Defendants failed to exercise any judgment with respect to RSL Plc and its creditors, there is no exercise of business judgment to be protected. "It is well established that the business judgment rule does not apply when directors fail to act or abdicate their directorial responsibilities." *Macnish-Lenox, LLC v. Simpson*, No. 26021/04, 2007 WL 3086028, at *10 (N.Y. Sup. Ct. Oct. 23, 2007). Indeed, in denying the Defendants' motion to dismiss the Complaint, this Court declined to apply the business judgment rule and observed that "the law does not tolerate inaction of the sort Defendants are alleged to have engaged in, as Defendants allegedly failed to consider any information they had regarding the company's financial health and allegedly failed to make a business judgment as a board regarding any financial decision on behalf of RSL Plc." *Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *19-20. Here, because the Defendants failed to meet and consider the interests of RSL Plc during the year 2000, they exercised no business judgment that is entitled to protection. Accordingly, the business judgment rule defense is not available to defeat this motion for partial summary judgment on the Defendants' liability.

      2.      The Defendants could not fulfill their duties to RSL Plc by acting for RSL Ltd.

Faced with indisputable evidence of their complete failure to act as directors of RSL Plc during the year 2000, the Defendants nonetheless cling to the same defense previously rejected by this Court that they fulfilled their fiduciary obligations to RSL Plc and its creditors by acting as directors or officers or RSL Ltd.[9] This contention ignores a previous court decision also arising from the collapse of the RSL Group (*see Official Comm. of Unsecured Creds. of RSL*

---

[9] *See, e.g.,* letter to Hon. Richard J. Sullivan from John S. Kiernan dated October 31, 2007.

*COM Primecall, Inc. v. Beckoff (In re RSL COM Primecall, Inc.)*, Adv. No. 03-2176 (ALG), 2003 WL 22989669, at *14 (Bankr. S.D.N.Y. Dec. 11, 2003) (stating that "PLC and LTD were entitled to have directors who had due regard for their respective interests and the interests of their creditors, just as was RSL USA.")), and was also expressly considered and rejected by this Court as a matter of law. As this Court stated, "Because of their work on behalf of RSL Ltd, Defendants assert that no additional meetings on behalf of RSL Plc were required and, in fact, would have been pointless. This argument is unpersuasive." *See Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *21. This Court also noted that the RSL Ltd. board could not have fulfilled the Defendants' duties, and held that "the slightest variation in interests between the two entities nullifies Defendants' argument here." *Id.* at *31. In fact, the Defendants' contention in this regard actually serves to bolster the Plaintiff's motion for partial summary judgment as to the Defendants' liability for breaching their fiduciary duties. If the RSL Plc board in fact had met, deliberated, and passed a resolution stating that for the remainder of the year, all deliberations and decisions concerning RSL Plc's interests and creditors would be delegated to the RSL Ltd. board, the RSL Plc board would have breached its fiduciary duties to RSL Plc by improperly delegating its fiduciary obligations to a board of directors owing no fiduciary obligations to RSL Plc.[10] *See Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *31 ("Indeed, the board of RSL Ltd. owed no allegiance whatsoever to RSL Plc.").

---

[10] Of course, the Defendants never held any such meeting, never made any judgment that the interests of RSL Plc were being adequately protected by RSL Ltd.'s board, and never requested or received legal advice stating that such a delegation of their fiduciary obligations was either possible or prudent. After a year of discovery involving eighteen depositions and the production of thousands of pages of documents, the Defendants cannot produce any evidence to the contrary. Their failure to ever consider whether RSL Plc had separate interests from RSL Ltd. in and of itself constitutes a breach of the Defendants' fiduciary duties. "[T]he duty to consider whether a different decision [concerning the operations of RSL Plc] should be made did not disappear because the RSL Ltd. board met." *Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *31-32. In any event, the interests of RSL Ltd. and RSL Plc were not identical. For example, the Defendants have conceded that RSL Ltd. owned subsidiaries that were not also owned by RSL Plc.

Directors may not abandon their fiduciary obligations.  "A board may not either formally or effectively abdicate its statutory power and fiduciary duty to manage and direct the management of the business and affairs of the corporation." *Id.* at *13-14 (internal citations and quotation marks omitted).  Thus, as a matter of law, directors of a company cannot fulfill their fiduciary duties to their company by simply deferring to another party, such as a separate board of directors of a separate (albeit affiliated) company.  In articulating this bedrock principle of corporate governance, this Court has explained that:

> Individuals who act in a dual capacity as directors of two corporations, one of whom is parent and the other subsidiary, owe the same duty of good management to both corporations . . . .  The Supreme Court has held it is a well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership.  It has also noted the general presumption that directors are wearing their subsidiary hats and not their parent hats when acting for the subsidiary.  Thus, while the duty of good management is to be exercised in light of what is best for both companies, where an individual is director of both the parent and the subsidiary, and takes an action which breaches his fiduciary duties to both, [i]t is equally clear that the subsidiary has a cause of action against its own director . . . .  In any event, those who operate the parent company owe no fiduciary duty to the wholly owned subsidiary.  Thus, even if those Defendants who were on RSL Ltd's board honored their fiduciary duties to RSL Ltd, there is nothing about that fact that, *as a matter of law*, relieves Defendants from Plaintiff's allegations.

*Id.* at *21-23 (citations and internal quotation marks omitted) (emphasis added).  *See also First Cent. Fin. Corp. v. Simon (In re First Cent. Fin. Corp.*, 269 B.R. 502, 512 (Bankr. E.D.N.Y. 2001) (stating that persons who act in a dual capacity as directors of two corporations, one parent and the other subsidiary, owe the same duty of good management to both corporations) (citations

---

Statement at ¶ 45.  Thus, RSL Ltd. had an interest in a group of companies in which RSL Plc did not have an interest.

omitted); *Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, No. 03 Civ. 0377 (NRB), 2003 U.S. Dist. LEXIS 13197, at *12-14 (S.D.N.Y. July 30, 2003) (noting the "well established principle" that directors and officers holding positions with a parent and its subsidiary must "change hats" to represent the two corporations separately) (citations omitted). Accordingly, the duties owed by the Defendants to RSL Plc could not be delegated to another board of directors, or fulfilled by actions undertaken by the Defendants as fiduciaries for another company. [11]

The Defendants also cannot now re-litigate the legal question of whether the actions taken by the Defendants as fiduciaries of RSL Ltd. could fulfill their separate fiduciary obligations to RSL Plc and its creditors. This Court's decision on the motion to dismiss constitutes the law of this case, and the parties are bound by its legal rulings. The law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Although the decision to rely on this doctrine is discretionary, courts in the Second Circuit only decline to invoke the law of the case under certain circumstances, such as "when there is a change in controlling law, when new evidence becomes available, to correct a clear error, or prevent manifest injustice." *New York City Dep't of Fin. v. Twin Rivers, Inc.*, 1997 U.S. Dist. LEXIS 7735, *4 (S.D.N.Y. June 4, 1997). None of these factors is present in this case. Further, the burden to justify reconsideration of the law of the case is on the party challenging a

---

[11] It is worth noting that the boards of directors of RSL Ltd. and RSL Plc were *not* identical in the year 2000. Defendants Steven Schiffman, Nesim Bildirici, and Paul Domorski were only directors of RSL Plc, and not of RSL Ltd. Further, RSL Ltd. had several directors who were not directors of RSL Plc: Leonard Lauder, Gustavo Cisneros, Fred Langhammer, and Nicolas Trollope. Thus, it cannot be said that meetings of the boards of directors of RSL Ltd. and of RSL Plc would have been meetings of all the same individuals.

ruling of a prior court in the same case. *In re Northern Telecom Ltd. Secs. Litig.*, 42 F. Supp. 2d 234, 239 (S.D.N.Y. 1998).

Even on a motion to dismiss, the Court's legal conclusions that are not altered by discovery or by contrary developments in the law becomes the law of the case that should not be reconsidered on a subsequent motion for summary judgment. *Nobel Ins. Co. v. City of New York*, 2006 U.S. Dist. LEXIS 70816,*13 (S.D.N.Y. Sept. 29, 2006). *See also, L-3 Commc'ns Corp. v. OSI Sys, Inc.*, No. 02-CV-9144 (PAC), 2006 U.S. Dist. LEXIS 19686, *39-40 (S.D.N.Y. Apr. 11, 2006) (declining to reconsider court's prior ruling regarding plaintiff's liability for fiduciary duty issues, which was held to be the law of the case, and indicating intention to instruct the jury consistent with this previous ruling). Accordingly, the Defendants cannot prevail on any arguments that are contrary to the established law of the case, such as their argument that, by acting as fiduciaries for RSL Ltd., they somehow fulfilled their fiduciary duties to RSL Plc and its creditors.

3.     The Defendants could not and did not fulfill their duties to RSL Plc by acting informally.

The Defendants also are not able to contend that they considered the interests of RSL Plc in informal meetings because there is no evidence that any such informal meetings took place. Even had they participated in informal meetings, the Defendants could not have fulfilled their fiduciary duties to RSL Plc and its creditors because New York law requires that boards act in a formal way at formal meetings. *See, e.g.*, New York Business Corporation Law § 708(a) ("[e]xcept as otherwise provided in this chapter, any reference in this chapter to corporate action to be taken by the board shall mean such action at a meeting of the board"). In *Douglas Dev. Corp. v. Carillo*, 64 N.Y.S.2d 747 (Sup. Ct. 1946), the court dismissed an action brought by a corporation where that corporation's board had failed to authorize the commencement of the

action.  The *Douglas* court ruled that even though two of the company's three directors were in favor of bringing the action, "[a]cts done by [the directors] or a majority of them meeting informally cannot constitute corporate warrant, nor can corporate procedure be so bypassed[.]" *Id.* at 748; *see also Spanos v. Boschen*, 61 A.D.2d 837, 402 N.Y.S.2d 423 (2d Dep't 1978) (affirming the dismissal of a lawsuit commenced by certain of a not-for-profit corporation's directors where said directors did not act formally as a board in bringing the lawsuit); *Boyle v. Petrie Stores Corp.*, 136 Misc. 2d 380, 387, 518 N.Y.S.2d 854, 858 (Sup. Ct. 1985) ("The board, as a composite corporate body, speaks through its resolutions and bylaws.") (citations omitted).

In point of fact, however, the Defendants are not able to produce evidence that they met informally to consider the interests of RSL Plc.  Defendant Ronald Lauder admitted that no such meetings took place:

> Q:  "Do you recall ever participating in an informal meeting with the members of the Board of Directors of RSL Communications PLC to discuss RSL Communications PLC?"
>
> A:  "Specifically to discuss PLC?"
>
> Q:  "Yes."
>
> A:  "No.  I don't recall any."

Dembrow Decl., Exhibit J at 17:3-9.  Further, Defendant Jacob Schuster testified that "There were discussions at the [RSL Ltd.] board as to how Limited should operate in the environment that we were in [in 2001] . . .  There was no discussion, that I remember, as to PLC in this discussion." *Id.*, Exhibit H at 117:11-20.

Indeed, the Defendants paid little heed to, and consequently were completely unaware of, the extent of RSL Plc's business.  Mr. Bildirici testified bluntly that "PLC meant nothing to me as an – as a director or as an employee of RSL", *id.*, Exhibit B at 30:9-11, and that "I don't know anything about PLC." *Id.* at 55:17.  Further, Mr. Lauder testified that "I wasn't

aware of [RSL Plc being a holding company for operating subsidiaries]. All I knew was that it was a way that when people made the investment, it went right into Limited." Dembrow Decl., Exhibit J, at 9:22-25. Indeed, the Defendants conceded that during the year 2000, they did not even confer informally to determine whether the interests of RSL Plc were separate from those of RSL Ltd. Statement at ¶ 40. Given the Defendants' complete lack of knowledge of and consideration for the corporation of which they were directors, it is not surprising that they failed to take any action on its behalf. Their inaction constitutes a breach of their fiduciary duties to RSL Plc and its creditors. Quite simply, the Defendants have no defense or excuse for their failure to act. Partial summary judgment on liability is therefore appropriate.

POINT III.

THE DEFENDANTS' INACTION WAS A SUBSTANTIAL FACTOR IN
CAUSING THE DAMAGES SUFFERED BY RSL PLC AND ITS CREDITORS

The Court should grant the Plaintiff's motion for partial summary judgment with respect to causation. There is no dispute that the Defendants were the only persons who could have taken action on behalf of RSL Plc. Therefore, their inaction necessarily must have been a substantial factor in causing the damages suffered by RSL Plc and its creditors.

A.     Causation is an Appropriate Matter for Summary Judgment

Courts have acknowledged that "[t]here are certain instances, to be sure, where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980). *See also Gil v. National R.R. Passenger Corp.*, No. 02-CV-2687, 2007 WL 2230176, at *3 (E.D.N.Y. Aug. 1, 2007) ("where only one conclusion may be drawn from the established facts . . . the question of legal cause may be decided as a matter of law") (citations omitted).

Where, as here, the underlying facts are not disputed and the damages suffered by RSL Plc and its creditors could only have been prevented by the Defendants, courts in the Second Circuit will grant summary judgment on the issue of causation. *See, e.g., FDIC v. Nat'l Union Fire Ins. Co.*, 205 F.3d 66, 76 (2d Cir. 2000) (granting summary judgment for plaintiff receiver FDIC on the issue of whether fraudulent nondisclosure directly caused bank's loss); *Twenty First Century L.P. I. v. LaBianca*, 19 F. Supp. 2d 35, 40 (E.D.N.Y. 1998) (granting plaintiff summary judgment on breach of fiduciary duty claim and noting that defendants' wrongdoing was "clearly" a cause of plaintiff's loss); *Forum Ins. Co. v. Zeitman*, No. 91 Civ. 7980 (LLS), 1995 U.S. Dist. LEXIS 13229, at *10 (S.D.N.Y. Sept. 12, 1995) (granting summary judgment for plaintiff insurance company on its breach of fiduciary duty claim); *Weiss/Watson, Inc. v. Lange*, No. 87 Civ. 0032 (JFK), 1990 U.S. Dist. LEXIS 3065, at *9 (S.D.N.Y. Mar. 20, 1990) (quoting *Duane Jones Co. v. Burke*, 306 N.Y. 172, 187 (1954)) ("Placing the allegations . . . in the light most favorable to the defendant, there is no doubt that [defendant's] conduct is sufficiently 'below the standard required by the law . . . to qualify as a breach of the duty of loyalty.'").

As explained below, the Defendants were the only persons holding a fiduciary position with RSL Plc who could have acted to preserve the value of RSL Plc's assets. Their inaction necessarily was the cause of damages suffered by RSL Plc and its creditors. Under these facts, pursuant to the above authorities, the Court may grant partial summary judgment on the issue of causation.

B.    <u>Plaintiff is Entitled to Partial Summary Judgment Under The Substantial Factor Test</u>

In denying the Defendants' motion to dismiss the Complaint in this action, this Court stated that "[t]o establish that Defendants breached their duty of care, Plaintiff need only

'establish that the offending parties' actions were 'a substantial factor' in causing an identifiable loss.'" 2006 U.S. Dist. LEXIS 67548, at *14 (quoting *FDIC v. Bober*, No. 95 Civ 9529, 2003 WL 21976410, at *1 (S.D.N.Y. Aug. 19, 2003)). Courts in the Second Circuit consistently have applied the substantial factor test in breach of fiduciary duty cases. *See, e.g., Evvtex Co. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1334 (2d Cir. 1996) (citations omitted) ("The Second Circuit does not require an express finding of proximate cause in fiduciary duty cases"). *See also Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 927 (S.D.N.Y. 1997) (citations omitted) ("In contrast to their malpractice claim, plaintiffs need not demonstrate that defendants' alleged breach of fiduciary duty was the proximate cause of Mr. Re's defeat at arbitration . . . . In order to establish causation . . . plaintiffs need only demonstrate that the defendants' alleged breach of fiduciary duty was a 'substantial factor' in Mr. Re's loss at arbitration."); *People of the State of New York v. H & R Block, Inc.*, 16 Misc. 3d 1124A, Slip Op., 2007 WL 2330924 (N.Y. Sup. Ct. July 9, 2007) (citing N.Y. PATTERN JURY INSTRUCTION (2002)) (plaintiff pleading breach of fiduciary duty must show, *inter alia*, "that the breach was a substantial factor in causing plaintiff's injury").

As Black's Law Dictionary explains, under the substantial factor test, "causation exists when the defendant's conduct is an important or significant contributor to the plaintiff's injuries." Black's Law Dictionary (8th ed. 2004). The Second Circuit has reasoned that courts should loosen the causation requirement in breach of fiduciary duty cases because "[a]n action for breach of fiduciary duty is a prophylactic rule intended to remove all incentive to breach – not simply to compensate for damages in the event of a breach." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 995-96 (2d Cir. 1983) (citing *Diamond v. Oreamuno*, 24 N.Y.2d 494 (1969)).

Under the relaxed causation standard employed in the Second Circuit, a defendant may not fail to take reasonable action and subsequently argue that he was not the strict proximate cause of the plaintiff's loss.  For example, in *Forum Insurance v. Zeitman,* the Southern District found the defendant's breach of fiduciary duty to be a substantial factor in bringing about the plaintiff's harm.   1995 U.S. Dist. LEXIS 13229, at *9-10.   There, the plaintiff insurance company, which provided surety bonds guaranteeing payment obligations of investors in limited partnerships, engaged defendant management company to market and issue its products.  *Id.* at *1.  The defendant issued bonds on behalf non-qualifying investors and in amounts exceeding its authority, thus breaching its agency agreement with the plaintiff.   *Id.*   The defendant acknowledged that it owed a fiduciary duty to the plaintiff and that it had violated the agreement, but argued that the breach did not proximately cause the loss.  *Id.* at *3, *7, *9.   The court disagreed, explaining that "a plaintiff alleging a breach of fiduciary duty need not prove that the breach proximately caused its damages . . . only that the fiduciary's act or omission was a substantial factor in causing the plaintiff's loss." *Id.* at *9 (citing *Northwestern Nat'l Ins. Co. v. Alberts,* 769 F. Supp. 498, 506 (S.D.N.Y. 1991)).   Thus, "[a]lthough the investors had to default before [plaintiff] paid on their behalf," causation under the substantial factor test was established and summary judgment was granted in favor of the plaintiff. *Id.* at *9-10.

Here, as the Defendants have testified on numerous occasions, RSL Plc had no employees.[12]  Therefore, the Defendants, as directors of RSL Plc, were the only persons who could have acted on RSL Plc's behalf, either by taking action themselves or by hiring and

---

[12] *See, e.g.,* Dembrow Decl, Exhibit B at 29:20-22 ("So, Plc . . . did not have any employees, is that correct?" "Yes."); *id.*, Exhibit L at 16:16-17 ("Plc . . . did not have any employees."); *id.* at 85:10-12 ("RSL Plc . . . does not have any employees."); Dembrow Decl., Exhibit K at 39:12-14 ("RSL Plc was a financing vehicle, and its activities were restricted to that.  It had no employees.").

empowering officers or other employees to act. *See, e.g., In re Dark Horse Tavern*, 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995) ("It is well established that outside the bankruptcy context a corporation can only act through its directors, officers, and employees."); *see also Goldenberg v. Bartell Broadcasting Corp.*, 47 Misc. 2d 105, 108-09, 262 N.Y.S.2d 274, 279 (Sup. Ct. June 4, 1965). Moreover, the Defendants have conceded that the collective market value of RSL Plc's operating subsidiaries in March 2001 was less than their value in June 2000. Statement at ¶ 46. Thus, the failure of the Defendants to take any action to protect RSL Plc in the year 2000 must have been, as a matter of law, a substantial factor in causing the admitted decline in value of RSL Plc's assets, and the resulting damages suffered by RSL Plc and its creditors.

This remains true regardless of whether other events also contributed to the losses suffered by the Plaintiff. For example, in *Milbank, Tweed, Hadley & McCloy v. Boon*, the Second Circuit agreed with the trial court that when a law firm first represented one client in connection with an asset purchase, then later represented that client's agent in the same transaction without the initial client's consent, the law firm's breach of fiduciary duty was a substantial factor in preventing the client from obtaining the assets she sought. 13 F.3d 537, 538-39 (2d Cir. 1994). This was true even though the client "would not have been able to acquire the assets without bidding on them, and this she failed to do by her own choice." *Id.* at 542. The Second Circuit explained that the client was not required to demonstrate strict but-for causation or proximate cause, only that "Milbank's representation of [the agent] was at least a substantial factor in preventing her from acquiring the second stage assets." *Id.* at 543.

The Southern District also has held defendants liable for breach of fiduciary duty under the substantial factor test despite the occurrence of other events that potentially played a role in causing plaintiffs' injuries. For example, in *FDIC v. Bober*, the defendant directors argued that they were not liable for breach of fiduciary duty because "the chain of causation from

their improper approval of the extensions of credit was broken by events subsequent to their actions for which they are not liable." 2003 WL 21976410, at *1.  The court, however, refused to accept this argument because "breaches of a fiduciary relationship in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages." *Id.*

As such, market conditions in the year 2000, the downfall of the telecommunications industry and/or any other excuse the Defendants may conjure up to explain RSL Plc's collapse cannot serve to legally exculpate them from liability.  *See, e.g., Fisher v. Reich*, No. 92 Civ. 4158 (MBM), 1994 U.S. Dist. LEXIS 17121, at *44-45 (S.D.N.Y. Dec. 1, 1994) (citations omitted) ("New York courts have relaxed the causation requirement for [breach of fiduciary duty] claims . . . .  The less demanding 'substantial factor' standard can be satisfied for breach of fiduciary duty claims despite the presence of intervening events.").  The Defendants' failure to hold board meetings, or, for that matter, to take any action whatsoever on behalf of RSL Plc in the year 2000, was a substantial factor in causing the losses suffered by RSL Plc and its creditors.  To rule otherwise would be to determine that it is neither "important" nor "significant" that directors hold board meetings and take actions on behalf of each specific company they serve.  This would negate the substantial case law requiring directors to act vigilantly on behalf of the corporation they serve.  *See* section II. A. *supra*.  Because there is no dispute that the Defendants took no action as a board of directors during the year 2000, the Plaintiff is entitled to partial summary judgment on the issue of causation.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Plaintiff respectfully requests entry of an order granting its motion for partial summary judgment, and granting such other and further relief as is just.

Dated:     New York, New York
           November 29, 2007

                              CADWALADER, WICKERSHAM & TAFT LLP


                              By:_____
                              John H. Bae (JB 4792)
                              Ingrid Bagby (IB 3844)
                              Adam C. Dembrow (AD 2142)
                              One World Financial Center
                              New York, New York 10281
                              Telephone: (212) 504-6000
                              Facsimile: (212) 504-6666


                              Attorneys for Plaintiff, RSL Communications Plc

-34-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RSL Communications PLC | | Case No. 04 cv 5217 (RJS)(AJP) |
| | Plaintiff, | |
| -against- | | |
| Nelsom Bildirici, et al. | | **AFFIDAVIT OF SERVICE** |
| | Defendants. | |

STATE OF NEW YORK:
                : SS
COUNTY OF NEW YORK:

Jon Messinger, being duly sworn, deposes and says:

1.       I am not a party to this action, am over 18 years of age and reside in New York County.

2.       On the 29th day of November 2007, I served a true and correct copy of the

- Notice of Motion;
- Local Rule 56.1 Statement of Uncontested Material Facts in Support of RSL Communications PLC's Motion for Partial Summary Judgment;
- Memorandum of Law in Support of Motion of RSL Communications PLC for Partial Summary Judgment;
- Declaration of Adam C. Dembrow in Support of Motion of RSL Communications PLC for Partial Summary Judgment;
- Affidavit of Steven G. Panagos in Support of Plaintiff's Motion for Partial Summary Judgment;
- Declaration of Michael John Andrew Jervis in Support of Plaintiff's Motion for Partial Summary Judgment;
- Compendium of Unreported Cases Cited in Plaintiff's Memorandum of Law in Support of RSL Communications PLC for Partial Summary Judgment;
- Exhibits A-U to the Declaration of Adam C. Dembrow;
- Exhibits V-NN to the Declaration of Adam C. Dembrow;

by hand, by delivering and leaving a true copy, addressed to the following:

Debevoise & Plimpton, LLP(NYC)
919 Third Avenue
New York, NY 10022

Dewey Pegno & Kramarsky LLP
The News Building
220 East 42nd Street
New York, New York 10017

Jon Messinger.

Sworn to before me on this
29th day of January 2007

Notary Public

DAVID MOURA JR.
NOTARY PUBLIC, State of New York
No. 01MO6914296
Qualified in Bronx County
Commission Expires October 5, 2008

SUBMITTED BY:   Plaintiff   X   Defendant

Attorney's Name:

Firm Name:   Cadwalader, Wickersham & Taft LLP
              One World Financial Center
Address:      New York, NY 10281

Phone Number:   (212) 504-6085

RECEIVED
07 NOV 29 PM 4:56

U.S. DISTRICT COURT
SECOND
RIGHT D.

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK
CLERK'S OFFICE



# SEALED AND IMPOUNDED RECORD

ORDERED SEALED AND IMPOUNDED AND PLACED
IN A SECURED AREA IN THE CLERK'S OFFICE
AND MAY NOT BE UNSEALED UNLESS ORDERED
BY THE COURT.

ORDER DATED:

U.S.D.J./U.S. MAGISTRATE JUDGE

RECEIVED IN CASHIER'S/MAG.

# SEALED AND IMPOUNDED RECORD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RSL COMMUNICATIONS PLC, by
Michael John Andrew Jervis and Steven Anthony Pearson,
as the Joint Administrators,

Plaintiff,

-against-

NESIM BILDIRICI, PAUL DOMORSKI,
ITZHAK FISHER, RONALD S. LAUDER,
STEVEN SCHIFFMAN, JACOB SCHUSTER
and EUGENE SEKULOW,

Defendants.

04 Civ. 5217 (RJS) (AJP)

MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF RSL COMMUNICATIONS PLC
FOR PARTIAL SUMMARY JUDGMENT

