CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
John H. Bae (JB 4792)
Ingrid Bagby (IB 3844)
Adam C. Dembrow (AD 2142)                    FILED UNDER SEAL

Attorneys for Plaintiff, RSL Communications Plc

                                             Contains Confidential and
UNITED STATES DISTRICT COURT                 Highly Confidential Information
SOUTHERN DISTRICT OF NEW YORK                Subject to Protective Order

| RSL COMMUNICATIONS PLC, by Michael John Andrew Jervis and Steven Anthony Pearson, as the Joint Administrators, |
|---|
| Plaintiff, |
| -against- |
| NESIM BILDIRICI, PAUL DOMORSKI, ITZHAK FISHER, RONALD S. LAUDER, STEVEN SCHIFFMAN, JACOB SCHUSTER and EUGENE SEKULOW, |
| Defendants. |

04 Civ. 5217 (RJS)

REPLY MEMORANDUM OF LAW OF RSL
COMMUNICATIONS PLC IN FURTHER SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ......................................................................................................................2

I. THE COURT SHOULD GRANT PLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON ITS PRIOR RULINGS ...............................................2

II. DEFENDANTS HAVE FAILED TO JUSTIFY THEIR FAILURE TO MEET TO CONSIDER THE INTERESTS OF PLC AND ITS CREDITORS ....................................6

III. DEFENDANTS' DUTIES EXTENDED TO CREDITORS WHEN PLC ENTERED THE ZONE OF INSOLVENCY ...................................................8

IV. THIS COURT PROPERLY APPLIED THE "SUBSTANTIAL FACTOR" TEST ............9

CONCLUSION ................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**  **PAGE(S)**

*Am. Fed. Group, Ltd. v. Rothenberg,*
   No. 91 Civ. 7860 (THK), 2003 U.S. Dist. LEXIS 18353 (S.D.N.Y. Oct. 14,
   2003) ..................................................................................................................10

*Atias v. Sedrish*,
   No. 02-7873, 2005 U.S. App. LEXIS 2245 (2d Cir. Feb. 11, 2005) ..........................10

*Bayer v. Beran*,
   49 N.Y.S.2d 2 (N.Y. Sup. Ct. 1944) .........................................................................6

*Clarke Mem'l Coll. v. Monaghan Land Co.,*
   257 A.2d 234, 241 (Del. Ch. 1969)............................................................................3

*Goldston v. Bandwidth Tech. Corp.*,
   No. 112098/04, 2007 N.Y. Misc. LEXIS 2360 (N.Y. Sup. Ct. Mar. 6, 2007) ..............7

*Hallinan v. Republic Bank & Trust Co.*,
   06 Civ. 185 (HB)  2007 U.S. Dist. LEXIS 65821 (S.D.N.Y. Sept. 7, 2007).................9

*Kostiuk v. Riverhead*,
   570 F. Supp. 603 (E.D.N.Y. 1983) ............................................................................4

*LNC Invs. v. First Fidelity Bank, N.A. N.J.*,
   173 F.3d 454 (2d Cir. 1999)......................................................................................10

*Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   No. 93 Civ. 3004 (LBS), 2000 WL 145461 (S.D.N.Y. Feb. 9, 2000), *rev'd on
   other grounds by Compagnie Financiere de CIC et de L'Union Europeenne v.
   Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153 (2d Cir. 2000)................10

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
   930 A.2d 92 (2007) ..................................................................................................8

*Nobel Ins. Co. v. City of New York*,
   No. 00-CV-1328 (KMK), 2006 U.S. Dist. LEXIS 70816 (S.D.N.Y. Sept. 29,
   2006) .......................................................................................................................3

*Northbay Constr. Co., Inc. v. Bauco Constr. Corp.,*
   38 A.D.3d 737 (2d Dep't 2007) ................................................................................10

*Rivervale Realty Co. v. Orangetown*,
    816 F. Supp. 937 (S.D.N.Y. 1993)..................................................................................4

*RSL Communications PLC v. Bildirici*,
    No. 04-CV-5217 (KMK), 2006 U.S. Dist. LEXIS 67548 (S.D.N.Y. Sept. 14,
    2006) ...................................................................................................... passim

## STATUTES AND OTHER AUTHORITIES

1 *New York Practice Guide: Business and Commercial* § 6.13 ..........................................7

*Rule 56 of the Federal Rules of Civil Procedure* ................................................................1

*White's New York Business Entities ¶ B708.02* ..................................................................6

Plaintiff RSL Communications Plc ("Plc" or "Plaintiff"), by Steven Anthony Pearson and Michael John Andrew Jervis as joint administrators, submits this reply memorandum of law in further support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment on the issues of liability and causation.

## PRELIMINARY STATEMENT

Plc has proven each of the key allegations in its Complaint with unqualified admissions of each of the Defendants and/or uncontested evidence – that even while Plc was in the zone of insolvency, Defendants failed to meet formally or informally to consider the interests of Plc and its creditors, and that by 2001, Plc's valuable assets became nearly worthless. As former directors of Plc, the Defendants were the only persons who could have taken action to preserve the assets of Plc. Against this backdrop, the Defendants have no basis to oppose Plc's motion for partial summary judgment.

Recognizing that they cannot alter the undisputed facts before the Court, Defendants ask the Court to ignore the law of this case and to disregard well established legal principles that are directly applicable to this action. Indeed, Defendants continue to look to the actions these Defendants purportedly took as directors or officers of Plc's parent company, RSL Communications, Ltd. ("Ltd."), to conclusorily contend that they looked out for the interests of Plc and its creditors. This Court, however, already has rejected that argument and that ruling remains the law of this case. Even were the Court to reconsider its prior ruling, Defendants' contention is belied by their own admission that they never discussed Plc or its creditors at any meeting. Moreover, in the face of Defendant Ronald Lauder's testimony that he had no idea what duties he owed to Plc and that he was not aware that Plc was the holding company for valuable operating subsidiaries, it defies logic to suggest that Defendants even had the ability to

look out for the interests of Plc or its creditors.  Defendants' continued reliance on a misreading of a recent Delaware Supreme Court decision to contend that the doctrine of "zone of insolvency" has been overruled is equally unavailing.  Every court that has construed that decision has rejected the Defendants' reading of the decision, and has continued to uphold the "zone of insolvency" concept, including the duties directors owe to the company's creditors.

The Court should also reject the Defendants' efforts to sidestep their fiduciary duties by blaming market conditions for Plc's demise rather than their own failure to preserve Plc's assets.  As directors of Plc, which had no employees, the Defendants were the only persons who could have taken any action to preserve Plc's assets at a time when it was facing distress.  Whether the Court accepts the valuation of Plc's expert, who has opined that Plc held assets having a value of approximately $1 billion in June 2000, or the Defendants' expert, who has opined that Plc held assets that had a value significantly greater than $1 billion at that time, it cannot be debated that Plc's assets became nearly worthless by March 2001.  The only persons who could have, and who should have, taken action to maximize the value of Plc's assets were the Defendants.  As evidenced by the indisputable record before the Court, they took no action.  Having failed to preserve the assets of Plc at a time when the value of those assets were declining rapidly, Defendants cannot disclaim that their inaction was a substantial factor in the losses suffered by Plc and its creditors.  The Court should grant Plc's motion for partial summary judgment.

## ARGUMENT

I. THE COURT SHOULD GRANT PLC'S MOTION FOR
   PARTIAL SUMMARY JUDGMENT BASED ON ITS PRIOR RULINGS

In denying the Defendants' motion to dismiss the Complaint, Judge Karas made a legal ruling that the Defendants, as directors of Plc, could not have fulfilled their fiduciary

obligations to Plc through their actions as fiduciaries of Ltd.  *See RSL Communications PLC v. Bildirici*, Case No. 04-CV-5217 (KMK), 2006 U.S. Dist. LEXIS 67548, at *23 (S.D.N.Y. Sept. 14, 2006); Memorandum of Law in Support of Motion of RSL Communications Plc for Partial Summary Judgment ("Pls. Mem.") at 22-26; RSL Communications Plc's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls. Opp.") at 41-44.[1]  This ruling remains binding whether or not the Defendants can prove (which they cannot) that Ltd. and Plc had identical interests and creditors.  *See* Pls. Opp. at 46, n. 16.  As a matter of law, Defendants owed a unique duty to each company they served, and they could not have fulfilled their fiduciary obligations to Plc through their actions as fiduciaries of Ltd.[2]  That they may have believed they were fulfilling their obligations to Plc by acting for Ltd., even if credible, has no legal significance.  *See* Pls. Opp. at 44-50.

Recognizing the futility of their defense in light of Judge Karas' prior rulings, Defendants now contend that this Court's prior rulings should be overturned.  *See* Pls. Opp. at 14-19.  Defendants, however, have failed to provide any legal basis to support their contention.  While Defendants rely on *Nobel Ins. Co. v. City of New York*, Case No. 00-CV-1328 (KMK), 2006 U.S. Dist. LEXIS 70816 (S.D.N.Y. Sept. 29, 2006), that decision is fatal for the Defendants, insofar as that court expressly held that a court's prior rulings, even on a motion to

---

[1] The Court made other rulings, including that the Defendants' failure to consider whether Plc had separate interests from Ltd. in and of itself constituted a breach of Defendants' fiduciary duties, and that the fiduciary duties of a corporation's directors extend to the corporation's creditors when the corporation enters the zone of insolvency.  *See* Pls. Opp. at 14 (citing *Bildirici*).

[2] Indeed, courts have held that directors may not delegate their duties to others who represent the same corporation.  *See Clarke Mem'l Coll. v. Monaghan Land Co.*, 257 A.2d 234, 241 (Del. Ch. 1969).

dismiss, should be followed unless the prior rulings are dependent on and should be altered by subsequently developed facts through discovery. *See* Pls. Opp. at 15-16.[3]

Defendants' purported factual basis for revisiting Judge Karas's prior rulings is also baseless. Contrary to their assertion, the Complaint does not allege that Defendants abdicated their fiduciary obligations to both Plc and Ltd. The Complaint is based on, and Plaintiff has now demonstrated through admissible undisputed evidence, the inaction on the part of *Plc's* directors. Each of the three paragraphs of the Complaint cited by the Defendants is clear on this point.[4] It is an undisputed fact that Defendants took no action as the Plc board, either formally or informally, to specifically consider the interests of Plc and its creditors. *See* Pls. Mem. at 17-21; 26-28. While Plc takes issue with the quality and sufficiency of the actions taken by the board of Ltd. in 2000, it has never alleged that the Ltd. board took no action at all. *See* Pls. Opp. at 43-44. Defendants do not, and cannot, explain how any action taken by Defendants as fiduciaries of Ltd. alter in any way the legal rulings articulated by this Court denying Defendants' motion to dismiss.

Further, Defendants disingenuously mischaracterize Judge Karas's decision by contending that Judge Karas's "central concern" was whether Ltd. was "plundering" Plc's assets, and that this concern underlay Judge Karas's holding that "the slightest variation in the interests

---

[3] Defendants' reliance on *Kostiuk v. Riverhead*, 570 F. Supp. 603 (E.D.N.Y. 1983), and *Rivervale Realty Co. v. Orangetown*, 816 F. Supp. 937 (S.D.N.Y. 1993), is misplaced insofar as neither decision revisited or overturned at the summary judgment stage legal rulings made at the motion to dismiss stage.

[4] "The board of directors of *RSL Plc* failed to meet to evaluate the impact of the [cancellation of the IPO of RSL Australia] upon the viability of the RSL Group, or the interests of RSL Plc or its creditors." Complaint at ¶ 39 (emphasis added). "[T]he directors of *RSL Plc* took no steps [in August 2000] to verify or evaluate the necessity, wisdom or propriety of continuing to provide cash to the RSL Group's operating subsidiaries." *Id.* at ¶ 45 (emphasis added). "While the board of directors of *RSL Plc* remained asleep at the switch, the downward spiral of the RSL Group continued, and in December 2000, RSL Ltd. was de-listed from the NASDAQ stock exchange." *Id.* at ¶ 50 (emphasis added).

between [Ltd. and Plc] nullifies Defendants' argument here." Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defs. Opp.") at 11 (quoting *Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *31). In making this erroneous contention, Defendants have re-arranged the language of the *Bildirici* decision to create a holding that simply is not there. In actuality, Judge Karas used this language to reject Defendants' effort to invoke the protection of the business judgment rule by holding that even if actions taken by the Ltd. board *de facto* accounted for the interests of Plc and its creditors, the "directors of RSL Plc still had an independent duty to consider the interests of its creditors." *Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *31. "[T]he slightest variation in the interests between [Ltd. and Plc] nullifies Defendants' argument here" because "the board of RSL Ltd owed no allegiance whatsoever to RSL Plc[.]" *Id.* Defendants are not protected by the business judgment rule because, as discussed above, it is settled law and precedent in this case that Defendants owed a separate duty to Plc that could not be satisfied by actions they took as fiduciaries of Ltd., a separate company. Despite that duty, Defendants were completely inattentive to Plc, never considered the unique interests of Plc and its creditors, and failed to act as the Plc board for the entire year, save for a single unanimous written consent, even though Plc's financial condition was rapidly declining.[5] It is black letter law that the business judgment rule applies only to acts or judgments made by directors. Having failed to exercise any judgment whatsoever concerning the business and

---

[5] Indeed, Defendant Lauder testified that he recognized that the telecommunications bubble had burst before August 2000, "in the summertime," and that by "August, September, maybe later than that, that it really started to look like a major wave as opposed to just an aberration." Deposition of Ronald Lauder, July 17, 2007, at 100.

interests of Plc, Defendants cannot avail themselves of the protections of the business judgment rule to escape liability.[6]  *See* Pls. Mem. at 22; Pls. Opp. at 41-44.

## II. DEFENDANTS HAVE FAILED TO JUSTIFY THEIR FAILURE TO MEET TO CONSIDER THE INTERESTS OF PLC AND ITS CREDITORS

By failing to participate in a single meeting of the Plc board to consider the interests of Plc and its creditors, and by failing to preserve Plc's cash and the value of its operating subsidiaries, Defendants breached their fiduciary duty of care to Plc and its creditors. *See* Pls. Mem. at 17-21.  Defendants now claim that they had no legal obligation to meet as the board of Plc.  The authorities they cite in support, however, do not support this proposition.  For example, Defendants cite selectively from ¶ B708.02 of *White's New York Business Entities*.  *See* Defs. Opp. at 14.  However, that section of *White's* states that "[i]t is well established that in order to act as a board, the directors must act collectively."  Defendants have cited to no evidence of collective action by the Plc board other than a single written consent by that board in February 2000.  Since they took no collective action while Plc's financial fortunes declined in mid-2000, *White's* does not help them escape liability.[7]

---

[6] In support of their argument that they should have the benefit of the business judgment rule even though they did not meet as the Plc board, Defendants cite to *Bayer v. Beran*, 49 N.Y.S.2d 2, 9-11 (N.Y. Sup. Ct. 1944), as an instance in which directors were not liable for failing to formally approve a particular transaction where that transaction was "approved and authorized by the members individually."  This holding is directly contradicted by the very same section of *White's New York Business Entities* (¶ B708.02) to which Defendants also cite, and which, according to Defendants, reflects "modern practice as reflected in modern law."  Defs. Opp. at 14.  *White's* states that "[i]t is well established that in order to act as a board, the directors must act collectively.  The assents of even all of the individual directors is not equivalent to action by the board and will not bind the corporation unless all the directors consent in writing to adopting a resolution authorizing the action."

[7] This same section of *White's* also states that "[i]f board action is not taken by consent, then the BCL contemplates a formal meeting at which the directors, properly convened, and acting as a board, consider and execute the business before them."  As discovery has unearthed but a single unanimous written consent from the Plc board in 2000, since the Plc directors were not acting through such consents, according to Defendants' own authority, they should have been holding board meetings.

Similarly, Defendants' citation to 1 *New York Practice Guide: Business and Commercial* § 6.13(2)(a) (Scott J. Giordano ed. 2005), to support their proposition that close corporations need not meet regularly is entirely unavailing. *See* Defs. Opp. at 14-15. The *New York Practice Guide* states that "special meetings" are the norm for close corporations,[8] and that such corporations typically hold "formal" meetings when particular transactions, such as bank loans, require it. *See id.* This actually undermines Defendants' argument, as the Plc directors never held *any* meetings in 2000, special or otherwise, even when particular transactions, such as Defendant Ronald Lauder's $100 million loan to Plc, clearly required it.[9] Importantly, discovery has demonstrated that Defendants did not even meet informally to discuss the unique interests of Plc and the creditors of Plc. *See* Pls. Mem. at 26-28.

Defendants also assert that they "asked counsel to advise them on all formal, procedural and substantive actions they should take to satisfy their fiduciary obligations as directors generally and as directors of Ltd. subsidiaries in particular." Defs. Opp. at 15. No record of any such advice being requested or received was produced during discovery. The only advice Defendants received (i) was not received until late 2000, well after Defendants' inaction that is the subject of this action, and (ii) did not pertain to Defendants' duties as directors of Plc. Defendants, therefore, have absolutely no basis for asserting a defense based upon reliance on advice of counsel. *See* Pls. Opp. at 50-56. The Court should entirely disregard this assertion.

---

[8] This Court has questioned whether Plc was in fact a small closely held corporation, given its $1.4 billion debt burden. *See Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *20-21.

[9] *Goldston v. Bandwidth Tech. Corp.*, No. 112098/04, 2007 N.Y. Misc. LEXIS 2360 (N.Y. Sup. Ct. Mar. 6, 2007), also does not help Defendants on this point. The *Goldston* court ruled that a contract entered into by only one of two directors of a company was not binding on the company because the company's well-established informal practice was to have two directors approve all contracts. *Id.* at *19-20. Such authority is inapposite, as Defendants have offered no evidence establishing that some particular informal practice was customary for addressing the interests of Plc.

### III. DEFENDANTS' DUTIES EXTENDED TO CREDITORS WHEN PLC ENTERED THE ZONE OF INSOLVENCY

Plc has demonstrated that even while it entered the zone of insolvency, the Defendants took no action as a board, formally or informally, to consider and protect the interests of Plc and its creditors. *See* Pls. Mem. at 17-21. Judge Karas denied Defendants' motion to dismiss and ruled, as a matter of law, that Plc's directors owed a duty to Plc and its creditors that could not be fulfilled by actions Defendants took on behalf of Ltd.[10]

Plaintiff has demonstrated, through the analysis of its expert, Steven Panagos, that Plc was in the zone of insolvency as of May 2000. *See* Pls. Mem. at 15-17. As of that time, Defendants owed fiduciary duties to Plc's creditors.[11] Defendants do not contest Mr. Panagos's zone of insolvency opinion.[12] Recognizing that they have failed to present any evidence to refute Mr. Panagos' opinion that Plc entered the zone of insolvency in May 2000, Defendants contend that the Delaware Supreme Court in *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (2007) "expressly repudiated" the concept of zone of insolvency. *See* Defs. Opp. at 4-5. This assertion misstates the *Gheewalla* decision, which preserved the concept of zone of insolvency, and merely held that creditors cannot assert *direct* claims against directors

---

[10] "[E]ven if RSL Ltd's board, in protecting the interests of *its* creditors, may have made decisions that *de facto* accounted for the interests of RSL Plc and its creditors, the directors of RSL Plc still had an independent duty to consider the interests of its creditors. . . . Indeed, the board of RSL Ltd. owed no allegiance whatsoever to RSL Plc, thus, even the slightest variation in the interests between the two entities nullifies Defendants' argument here." *Bildirici*, 2006 U.S. Dist. LEXIS 67548, at *30-31 (internal citations omitted).

[11] Defendants also owed fiduciary duties to Plc itself. *See* Pls. Mem. at 13-15. Their failure, in 2000, to meet and consider the unique interests of Plc constitutes a breach of those duties. *See id.* at 17-21.

[12] Mr. Panagos also opined that Plc was insolvent as of June 30, 2000. *See* Affidavit of Steven G. Panagos in Support of Plaintiff's Motion for Partial Summary Judgment, dated November 28, 2007 ("Panagos Aff."), Ex. A at 10-16. This opinion is based on the fair market value of Plc's assets weighed against its liabilities as of that date. *Id.* Defendants' suggestion that this conclusion was based on a 2001 Deloitte & Touche memorandum, or that the book value of Plc's assets factored into Mr. Panagos's analysis, are therefore wrong. *See* Defs. Opp. at 5.

of an insolvent company. Indeed, every single case interpreting *Gheewalla* has rejected the Defendants' position, and several recent decisions in this Circuit have expressly continued to recognize the concept of zone of insolvency.[13] *See* Pls. Opp. at 21-28. The fiduciary obligations of directors to the creditors of the company once the company enters the zone of insolvency remain intact. By failing to consider the interests of Plc's creditors when Plc entered the zone of insolvency, Defendants breached their duties. In the face of this, Defendants' claim that certain of them, in their capacity as officers or directors of Ltd., attempted to raise funds in mid-2000, does not raise any genuine issues of material fact as to whether they looked out for the interests of Plc and its creditors.[14] Defendants do not (and cannot) claim that they took any action based on consideration of what was best for Plc and its creditors, as they have explicitly admitted they did not consider their interests other than through acting for Ltd. Moreover, their beliefs concerning the depths of Plc's or Ltd.'s financial troubles are of no legal significance. S*ee* Pls. Opp. at 66. The Court should grant Plc's motion.

## IV.     THIS COURT PROPERLY APPLIED THE "SUBSTANTIAL FACTOR" TEST

Judge Karas correctly held that, "[t]o establish that Defendants breached their duty of care, Plaintiff need only 'establish that the offending parties' actions were 'a substantial factor' in causing an identifiable loss.'" *Bildirici,* 2006 U.S. Dist. LEXIS 67548, at *14 (internal

---

[13] Defendants' assertion that the court in *Hallinan v. Republic Bank & Trust Co.*, 06 Civ. 185 (HB), 2007 U.S. Dist. LEXIS 65821 (S.D.N.Y. Sept. 7, 2007), refused to permit a zone of insolvency argument is wrong. *See* Defs. Opp. at 5. The *Hallinan* court expressly recognized that the zone of insolvency would have been a valid defense for a particular party but that, having failed to raise it, the party had waived it. *Id.* at *20-24.

[14] Defendants' claim about the "successful sale" of Telegate in May 2000 for $400-$500 million is misleading. *See* Defs. Opp. at 3. No money was received from this sale until January 2001, and then only $150 million was received. *See* Pls. Opp. at 65-66. Moreover, Defendants' failure to market Plc's Finnish subsidiary in 2000 is far from the "sole specific criticism" of Defendants' sale efforts. *See* Defs. Opp. at 7 n. 2. The Finnish subsidiary was but one of several "core" subsidiaries that the directors of Plc could have marketed but failed to. *See* Panagos Aff., Ex. B at 25.

citations omitted). The prevailing law in this Circuit entirely supports and is consistent with Judge Karas's use of this standard. *See* Pls. Mem. at 29-33; Pls. Opp. at 67-71. Defendants' incorrect contention that the Court should apply a proximate cause standard here is not at all supported by the three Second Circuit cases to which they cite. Each of those cases involved plaintiffs who were seeking lost profits or lost earnings damages, which Plaintiff does not seek here.[15] Similarly, the state court authority to which Defendants cite, *Northbay Constr. Co., Inc. v. Bauco Constr. Corp.,* 38 A.D.3d 737, 738 (2d Dep't 2007), does not support Defendants' position as the New York Pattern Jury Instructions cited in the court's opinion expressly call for the use of the substantial factor standard.

Moreover, under New York law, the statutory due care standard is an objective, not a subjective, one. *See* Pls. Opp. at 71. Defendants' argument that the absence of Plc board meetings could not have caused damages because the Plc board would not have done anything differently misses the mark entirely. *See* Defs. Opp. at 18.[16] Under that logic, a director who mismanages the company by inaction could never be held liable since he could always contend

---

[15] *See Atias v. Sedrish,* No. 02-7873, 2005 U.S. App. LEXIS 2245, at *4 (2d Cir. Feb. 11, 2005) (limiting proximate causation requirement to breach of fiduciary duty actions seeking lost profits); *LNC Invs. v. First Fidelity Bank, N.A. N.J.,* 173 F.3d 454, 457 (2d Cir. 1999) (plaintiffs alleging lost profits); *Am. Fed. Group, Ltd. v. Rothenberg,* No. 91 Civ. 7860 (THK), 2003 U.S. Dist. LEXIS 18353, at *50 (S.D.N.Y. Oct. 14, 2003) (emphasizing that required showing of proximate cause is limited to breach of fiduciary duty cases "where, as here, a plaintiff is seeking to recover lost earnings or profits").

[16] This Court should reject Defendants' improper attempt to ground their argument here in comments made by Judge Karas during oral argument on their motion to dismiss. *See* Defs. Opp. at 18-19. Statements made by courts at oral arguments are in no way authoritative. "Many judges use oral argument as an opportunity to play devil's advocate to focus the argument, or to test the extreme implications of a litigant's position. A court speaks authoritatively, however, only in its opinions, orders, and judgments." *Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 93 Civ. 3004 (LBS), 2000 WL 145461, at *5 n. 6 (S.D.N.Y. Feb. 9, 2000), *rev'd on other grounds by Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153 (2d Cir. 2000). Defendants cannot credibly attempt to rely on non-authoritative comments made by Judge Karas at oral argument on the motion to dismiss regarding "concerns" about causation, while at the same time expressly rejecting authoritative legal rulings made in his actual opinion denying that motion.

that he would not have done anything differently. The law, of course, is to the contrary. The law applies an objective reasonable person standard, which Defendants cannot satisfy. Plc had no employees. Defendants, as Plc's directors, were the only persons who could have acted on Plc's behalf. *See* Pls. Mem. at 31-32. Had Defendants functioned as a board of directors for Plc's benefit by monitoring Plc's economic condition throughout the year 2000, and taking any number of actions to preserve Plc's cash and the value of its operating subsidiaries, they could have, at the very least, minimized the damages suffered by Plc and its creditors. *See* Pls. Mem. at 29-33; Pls. Opp. at 71-73. Defendants' failure to act was without a doubt a substantial factor in the damages suffered by Plc and its creditors. The Court should grant Plaintiff's motion.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests entry of an order granting its motion for partial summary judgment, and such other and further relief as is just.

Dated:   New York, New York
         January 30, 2008

CADWALADER, WICKERSHAM & TAFT LLP

By: _____
John H. Bae (JB 4792)
Ingrid Bagby (IB 3844)
Adam C. Dembrow (AD 2142)
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

Attorneys for Plaintiff, RSL Communications Plc