GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
John H. Bae, Esq.
baej@gtlaw.com

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Ingrid Bagby, Esq.
ingrid.bagby@cwt.com

FILED UNDER SEAL
Contains Confidential and
Highly Confidential
Information Subject to
Protective Order

Co-counsel for Plaintiff, RSL Communications Plc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RSL COMMUNICATIONS PLC, by Michael John Andrew Jervis and Steven Anthony Pearson, as the Joint Administrators,

      Plaintiff,

   -against-

NESIM BILDIRICI, PAUL DOMORSKI, ITZHAK FISHER, RONALD S. LAUDER, STEVEN SCHIFFMAN, JACOB SCHUSTER and EUGENE SEKULOW,

      Defendants.

04 Civ. 5217 (RJS)

# SUPPLEMENTAL MEMORANDUM OF LAW
## OF RSL COMMUNICATIONS PLC ON CAUSATION

In accordance with the Court's order of February 23, 2009, plaintiff RSL Communications Plc ("Plc"), by Steven Anthony Pearson and Michael John Andrew Jervis as joint administrators, submits this supplemental memorandum of law on the issue of causation.

I.   Substantial Factor is the Applicable Causation Standard For This Case

Plc respectfully submits that the proper test for causation for breach of fiduciary duty claims under New York law is whether the defendants' actions or inactions were a "substantial factor" in causing damages. It is well-settled that when sitting in diversity actions, federal courts are bound to follow state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 348 (2d Cir. 2003), *appeal after remand* at 467 F.3d 85 (2d Cir. 2006) (applying state law of proximate cause).

New York law is clear that the proper standard for causation is whether the defendants' breach of their fiduciary duty was a substantial factor in causing damages. The New York Pattern Jury Instructions for breach of fiduciary duty claims provide that:

> If you find that [defendant] did breach (his, her its) fiduciary duty to [plaintiff], you must then decide whether that breach was a substantial factor in causing [plaintiff] to sustain damages. . . . If you find that [defendant] breached a fiduciary duty, and that breach was a substantial factor in causing [plaintiff] to sustain damages, you will award [plaintiff] such an amount as you find to be the actual damages sustained for . . . compensation. . . .

NY PJI 3:59 (Dec. 2008). Consistent with these instructions, even after the Second Circuit's decision in *LNC Invs., Inc. v. First Fid. Bank, N.A., N.J.*, 173 F.3d 454 (2d Cir. 1999), New York courts have applied the substantial factor standard in breach of fiduciary duty cases, even where the plaintiff was not seeking restitution. *See, e.g., People ex rel. Spitzer v. Grasso*, 858 N.Y.S.2d 23, 32 ( N.Y. App. Div. 1st Dep't 2008) (holding that plaintiff must demonstrate only that breach "was a substantial factor in causing an identifiable loss" in an action for breach of fiduciary duties under section 717(a) of New York's Not-for-Profit Corporation Law); *Bluebird Partners*

*L.P. v. First Fid. Bank, N.A., N.J.,* 784 N.Y.S.2d 479, 480-81 (N.Y. App. Div. 1st Dep't 2004) (upholding jury's finding that defendant's inaction was a substantial factor in causing decline in value of creditor's collateral in a breach of fiduciary duty action); *Gibbs v. Breed, Abbott & Morgan,* 710 N.Y.S.2d 578, 584-85 (N.Y. App. Div. 1st Dep't 2000) (citing substantial factor test and remanding for determination as to causation and compensatory damages).[1]

Indeed, New York law provides that "proximate cause" is established if a plaintiff can demonstrate that a defendant's actions were a "substantial factor" in causing plaintiff's damages.[2] Thus, under New York law, Plc has established proximate cause if it can establish that the defendants' inaction was a substantial factor in causing damages to Plc and its creditors.

For these reasons, Plc respectfully submits that Judge Karas correctly ruled that substantial factor is the proper standard of causation to be applied in this case.

II.     <u>Plc is Able to Establish the Heightened Proximate Cause Standard</u>

Even if the Court were to apply the proximate cause standard here and require Plc to establish that its damages were reasonably foreseeable, the record before the Court is sufficient to demonstrate, or at a minimum raise a genuine issue of material fact, that the defendants' breach of fiduciary duty proximately caused damages to Plc and its creditors.

"Proximate cause is usually a question of fact for the jury to decide." *Bellis v. The Tokio Marine & Fire Ins. Co., Ltd.,* No. 93 Civ. 6549 (DAB), 2002 U.S. Dist. LEXIS 1714, at *40

---

[1] *See also Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.,* 388 F. Supp. 2d 292, 295, 304 (S.D.N.Y. 2005) (internal citations and quotation omitted) (ruling that "'a claim for breach of fiduciary duty need not meet the standard requirements of causation and damages'" in an action for losses suffered); *FDIC v. Bober,* No. 95 Civ. 9529 (JSM), 2003 WL 21976410, at *1 (S.D.N.Y. Aug. 19, 2003) (internal citation and quotation omitted) (ruling that "'A plaintiff alleging breach of fiduciary duty... is not required to meet the higher standard of loss or proximate causation'" in an action to recover for losses suffered in a swap transaction).

[2] *See Martonick v. Pudiak,* 285 A.D.2d 935, 936 (N.Y. App. Div. 3d Dep't 2001) (stating that "proximate cause" and "substantial factor" are synonymous); *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 15 (2d Cir. 2000) (internal citations omitted) (finding that proximate cause may be established by merely showing that defendants' actions were a substantial factor in bringing about the injury); NYPJI 2:70 (Dec. 2008) ("An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury").

(S.D.N.Y. Feb. 5, 2002) (internal citations omitted). In *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, the court found that however "unlikely" it was that the defendants' alleged breaches of fiduciary duty and other conduct, as opposed to the debtor's internal corruption and criminal activity, caused the debtor's bankruptcy, dismissal of the case was inappropriate because "proximate causation generally remains an issue of fact for the jury." 351 F. Supp. 2d 79, 91 (S.D.N.Y. 2004) (citing *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-841 (1996)). For summary judgment purposes, "the plaintiff is not required to produce direct evidence in order to prove proximate cause to 'a mathematical certainty.'" *Tokio Marine*, 2002 U.S. Dist. LEXIS 1714, at *39-40 (internal citations, quotations, and marks omitted). Accordingly, a plaintiff opposing summary judgment "need not prove proximate cause by a preponderance of the evidence. . . a plaintiff need only raise a triable issue of fact." *Burgos v. Aqueduct Realty Corp.*, 684 N.Y.S.2d 139, 141 (1998). Thus, in *FDIC v. Bober*, No. 95 Civ. 9529 (JSM), 2002 WL 1929486, at *3 (S.D.N.Y. Aug. 19, 2002), where the issue before the court was whether a director's failure to attend board meetings caused losses to the corporation, the court rued that whether the outcome of the board meetings would have been different had the director attended the meetings is a question of fact that could not be resolved on a motion for summary judgment.

The Second Circuit has ruled that proximate cause may be established by a showing that the defendant's conduct was a substantial factor in bringing about the plaintiff's injury and that such injury was reasonably foreseeable. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 215 (2d Cir. 2000). "[A]t common law, the element of foreseeability is generally satisfied by a showing that the plaintiff was in a foreseeable category of persons who might be harmed. . . . And this is so in some common law cases even when the type of harm may be unforeseeable." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir. 1999) (Calabresi C.J., concurring).

Courts in this district have held that proximate cause can be established by showing inaction on the part of a fiduciary defendant. Significantly, following remand by the Second Circuit in *LNC*, and applying the proximate cause standard, the district court in *LNC* ruled that proximate cause may be satisfied by showing that the fiduciary failed to take an action that would have limited the losses suffered by the plaintiff. *LNC Invs., Inc. v. First Fid. Bank*, 126 F. Supp. 2d 778 (S.D.N.Y. 2001). In *LNC*, the plaintiffs alleged that the trustee of a trust that issued bonds, which were secured by an aircraft that had been leased to a company in bankruptcy, caused the plaintiffs' losses by failing to take action in the bankruptcy court to gain control over the aircraft and sell it before it depreciated in value. The court ruled, "Plaintiffs would satisfy the proximate cause element on liability if they proved (1) the collateral's rate of decline over time, and (2) that Defendants' failure to act at some point or points along that time line (a) was imprudent and (b) adversely affected Plaintiffs' secured position." *Id.* at 800.

Other courts are in accord with *LNC* that inaction can establish proximate cause, even if other factors may have contributed or caused the damage. In *Lerner v. Fleet Bank, N.A.*, the Second Circuit held that defendants who breached their duty of care by failing to monitor trust accounts or to reasonably investigate suspicious activity could have proximately caused harm to those to whom they owed the duty. 459 F.3d 273, 283, 290 (2d Cir. 2006) (citing *Home Sav. of Am., FSB v. Amoros*, 661 N.Y.S.2d 635, 639 (N.Y. App. Div. 1st Dep't 1997)) (defendant "banks' alleged breaches of their duty to investigate and, if necessary, safeguard the funds in its trust account, would qualify as a proximate cause of the clients' losses"). Similarly, in *Malmsteen v. Berdon, LLP*, 595 F.Supp.2d 299, 308 (S.D.N.Y. 2009), where the plaintiff alleged that defendants breached their fiduciary duties and caused damages by failing to monitor his income, which enabled a third party to embezzle his funds, the court found that a reasonable jury

could conclude that defendants' failure to "discover and/or prevent such embezzlement played a substantial part in causing the loss. . . and that, if defendants had performed their duties, the embezzlement would not have occurred."

Here, there is ample evidence in the record before the Court to demonstrate that the defendants' inaction proximately caused foreseeable injury to Plc and its creditors. The finding in *LNC* regarding what would constitute a sufficient showing of proximate cause under the Second Circuit's 1999 *LNC* opinion is *precisely* the theory articulated by Plc here. As directors, the defendants owed a fiduciary duty to prevent the continued erosion of value of Plc's operating subsidiaries whose cash needs could not long be supported by, among other things, marketing the subsidiaries for sale. As conclusively supported by expert evidence, and as admitted by the defendants, Plc had significant assets whose values declined precipitously during the year 2000 as the company's access to and reserves of funding required to execute its business strategy were dissipated. *See* Declaration of Ingrid M. Bagby in Opposition to Defendants' Motion for Summary Judgment, dated January 9, 2008 ("Bagby Decl."), Ex. 25 at 54-55; Declaration of Adam C. Dembrow in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s S.J. Motion"), dated November 28, 2007 ("Dembrow Decl."), Exhibit HH at 16 (Response to Request for Admission No. 29). Defendants were fully aware in June 2000 that Plc and RSL Communications, Ltd. ("Ltd.") were going to run out of money, the telecommunications industry was hitting a difficult period, and they had no ability to raise capital. *See* Dembrow Decl., Ex. S at RSLPLC 4027; Statement of Uncontested Material Facts in Support of Pl.'s S.J. Motion ("Statement") at ¶¶ 20-23, 33. Against this backdrop, the actual damages Plc suffered were entirely foreseeable to the defendants in June 2000 -- that Plc would not be able to extract value from its subsidiaries if it were to run out of cash and was forced to conduct a fire sale while in an

insolvency or bankruptcy proceeding, and with its principal businesses and assets no longer able to operate in the ordinary course as going concerns due to a continued lack of funding. It is also undeniable that insofar as the defendants were fiduciaries for Plc and its creditors once Plc entered the zone of insolvency or became insolvent, Plc and its creditors were in the category of persons who would be harmed by the defendants' breach of their fiduciary duties. *Moore*, 189 F.3d at 179.

While defendants were not responsible for the meltdown of the telecommunications industry, defendants were responsible for the consequences of failing to take steps to extract value from the operating subsidiaries by marketing them for sale during this precarious period while funding required for continued operations was still available. *See* Affidavit of Steven G. Panagos in Support of Pl.'s S.J. Motion, dated November 28, 2007 ("Panagos Aff."), Ex. A at 26-27; *id.*, Ex. B at 25-26 (listing actions that prudent directors of distressed companies take). Defendants took no action whatsoever on behalf of Plc and allowed its assets to become nearly worthless. That inaction was the proximate cause of Plc missing out on an opportunity to extract value from its operating subsidiaries when they still had value. Bagby Decl., Ex. 25 at 3, 25-53.

It is undisputed that *only* the defendants, as the directors of a company with no employees, could have acted on Plc's behalf to preserve value for its creditors. The defendants failed to even meet to consider Plc's interests, much less take action of any kind on behalf of Plc. *See* Pl.'s S.J. Motion, at 17-21. This is unsurprising, because the defendants were shockingly ignorant about the company for which they served as directors. *See, e.g.,* Dembrow Decl., Ex. B at 30:9-11 ("PLC meant nothing to me as an – as a director or as an employee of RSL."). Others astonishingly did not realize that Plc was the owner of the stock of valuable operating companies in Europe and the United States. *See, e.g.,* Dembrow Decl., Ex. J at 9:19-22 ("I wasn't aware

[that Plc was a holding company for operating subsidiaries]"); *id.* at 13:16-14:7 ("I don't really know what duties I had as a director [of RSL Plc in 2000]. . . . I was under the impression that the only role that Plc had was to collect the money.").

Defendants' assertion that had they held Plc board meetings, they would have simply endorsed the decisions made by the Ltd. board, constitutes nothing more than self-serving conjecture.³ Since no meetings of the Plc board were ever held, defendants have no empirical basis for this speculation. Moreover, as held in *FDIC v. Bober*, at *3, whether the outcome of a board meeting would have been different had the defendants met as a board is a question for the jury. More importantly, the standard is not what these same defendants would have done, but rather, what a reasonable board member in similar circumstances would have done. NY BCL § 717(a) (2009) ("A director shall perform his duties as a director. . . with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances."); *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (citing NY BCL § 717) (same). These facts demonstrate that, or at a minimum raise genuine issues of material fact as to whether, the defendants' inaction proximately caused damages to Plc.

III.    Plc Can Establish Proximate Cause Even if the Court Considers Actions Taken for Ltd.

In determining whether defendants' inaction proximately caused damages to Plc and its creditors, the Court should not consider actions defendants may have taken on Ltd.'s behalf. The law is clear that directors of multiple companies cannot fulfill their fiduciary duties to a subsidiary simply by acting on behalf of its parent company. Pl.'s S.J. Motion at 22-25.

---

[3] This Court should disregard defendants' efforts to support this speculation with testimony from Richard Krasnow. *See* Defendants' Reply Memorandum in Support of Motion for Summary Judgment, at 24. Defendants' counsel badgered Krasnow for a sound bite, and Krasnow's counsel properly objected to this line of questioning as calling for speculation. *See* Declaration of Michele L. Angell, dated March 27, 2009 ("Angell Decl."), Ex. A at 107:7-23. This testimony may not be considered by this Court. *See Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008) (court may only consider admissible evidence on a summary judgment motion). Regardless, Krasnow's speculation relates to the period of November 2000 and thereafter, and is irrelevant to the defendants' actions in May or June 2000, which is the relevant period here.

While defendants argue that Plc and Ltd. had identical interests, and that they could have fulfilled their fiduciary duties to Plc by acting on behalf of Ltd., as this Court pointed out, "even the slightest variation in the interests between the two entities nullifies Defendants' argument here." *RSL Commc'ns Plc v. Bildirici*, No. 04-CV-5217 (KMK), 2006 WL 2689869, at *9 (S.D.N.Y. Sept. 14, 2006). The variations here were more than "slight." The record is clear that Plc and Ltd. had divergent interests in 2000.[4] Plc and Ltd. did not have identical creditors. *See* Bagby Decl., Ex. 21 at RSLPLC 031404; *See* Angell Decl., Ex. B. Moreover, while Ltd. guaranteed Plc's obligations on the $1.4 billion bond debt, insofar as Plc was not in default in 2000, the holders of those bonds were not creditors of Ltd. during the year 2000. Plc and Ltd. had different board members. Defendants Bildirici, Domorski, and Schiffman were not members of the Ltd. board, and owed duties to Plc, but not to Ltd. Thus, they could not possibly have discharged their obligations to Plc by acting for Ltd. On the other hand, Leonard Lauder, Gustavo Cisneros, Fred Langhammer, Nicolas Trollope, and Hilary Kramer sat on the Ltd. board, but were not directors of Plc, and had no fiduciary obligations to Plc to consider while acting for Ltd. Ltd. also had significant assets not owned by Plc. Indeed, based on the defendants' own expert, in addition to all of the assets held by Plc, as of September 30, 2000, Ltd. also owned operating subsidiaries in which Plc had no ownership interest that held a value of almost $300 million. *See* Bagby Decl., Ex. 10 at 212:6-213:3; Angell Decl., Ex. C. Ltd. enjoyed a positive equity value equal to approximately the value of these subsidiaries as of the date upon which Plc became insolvent.

---

[4] Ltd. advisor Randall Eisenberg testified that Ltd. and Plc "are two separate entities, and they do have different creditor constituents," and that he believed Ltd. "did have different creditors, creditors with some commonality with Plc, but had some others . . . And to the extent that adversely impacted one creditor's return over another, that creditor constituencies would be concerned if you were to commingle them versus keeping them separate." *See* Bagby Decl., Ex. 10 at 206:25-207:2; 209:20-210:6.

Since Ltd. had considerably more and different assets than Plc -- both on an absolute basis and relative to its liabilities -- Plc necessarily became insolvent before Ltd. became insolvent. Indeed, Mr. Panagos, Plc's expert, has testified and opined that Plc became insolvent in June 2000, *see* Panagos Aff., Ex. A at 4, while defendants' expert Mr. Hopkins has testified that Ltd. was not insolvent until September 2000. *See* Angell Decl., Ex. D at 40.[5] Once Plc became insolvent,[6] the duty of the Plc board would have been to maximize the value of Plc's assets for the benefit of its creditors. In contrast, Ltd., with its different and greater assets, remained solvent and owed no duties to its creditors. *See* Panagos Aff., Ex. B at 19. Logically, there was a period of time beginning with the first moment of Plc's insolvency and continuing for some period of time thereafter, during which Ltd. remained solvent while Plc was insolvent. Under these circumstances, defendants cannot continue to maintain that what was best for Ltd. or its equity holders was likewise best for Plc.

Nevertheless, even if the Court were to consider the actions some defendants may have taken on behalf of Ltd., such actions were not sufficient to prevent the damages suffered by Plc and its creditors. Mr. Panagos opined that although there were various actions "that the board of RSL Plc could have taken during 2000," he saw no evidence that "the board of RSL Ltd. had considered any of these matters." *See* Panagos Aff. at ¶ 5. Importantly, Mr. Panagos saw no evidence that the Ltd. board attempted to sell the assets of the entire Plc group, or Plc's valuable European operating subsidiaries, or even that the Ltd. board had marketed the "'core' European subsidiaries or the non-core assets of the business" such as Denmark, Sweden, and Switzerland.

---

[5] Elsewhere defendants insist that, based on the deposition testimony of Peter Spratt, Plc was not insolvent until the first quarter of 2001. *See* Angell Decl., Ex. E at 38:12-17; 39:3-9. Defendants have entirely ignored Mr. Spratt's declaration in which he states that neither he nor his U.K. firm, PricewaterhouseCoopers LLP, made any conclusions about the solvency of either Plc or Ltd. *See* Declaration of Peter Norman Spratt in Opposition to Defendants' Motion for Summary Judgment, dated January 7, 2008, at ¶¶ 4-7.

[6] Arguably, Plc was insolvent at the end of 1999, a year for which its accountants were unable to issue a going concern opinion. *See* Bagby Decl., Ex. 15 at 90:14-92:7.

*Id.* Plc's valuation expert, Mr. Den Uyl, testified that had such assets been sold, substantial value could have been realized. *See* Angell Decl., Ex. F at 213:7-18. Consistently, defendant Fisher testified that in June of 2000, Goldman Sachs advised him that Finland should be sold for $300 million dollars. *See* Dembrow Decl., Ex. L at 60:15-21. Defendants, however, produced no evidence to demonstrate that they made efforts to sell Finland, and defendant Bildirici expressly testified that Finland was deemed a "strategic" asset and was never marketed for sale. *See* Bagby Decl., Ex. 6 at 65:23-66:8.[7]

Accordingly, a jury could conclude that even considering the actions taken on behalf of Ltd. by the four defendants who also sat on that board, the defendants' failure to take the actions identified by Mr. Panagos proximately caused the foreseeable damages (discussed *supra* at 5-6) to Plc and its creditors. For these reasons, even if the Court applies a proximate causation standard here, Plc has established, at a minimum, issues that must be decided by a jury.[8]

## CONCLUSION

For all of the foregoing reasons, plaintiff Plc requests the Court grant Plc's motion for partial summary judgment, deny the defendants' motion for summary judgment, and grant to Plc such other and further relief as is just.

---

[7] Additionally, Mr. Panagos saw no evidence that the Ltd. board considered other expected reasonable, prudent courses of action, such as performing a solvency analysis of Plc early in 2000, limiting the build-out of the European network, and contemplating an out-of-court restructuring. Panagos Aff. at ¶ 5.

[8] Insofar as Plc conducted a year's worth of discovery in reliance upon Judge Karas's ruling that the applicable standard of causation was the "substantial factor" test, to the extent the Court determines that Plc has not at least raised a genuine issue of a material fact as to causation, Plc reserves its right to file a motion to either reopen discovery or to supplement the summary judgment record.

Dated: New York, New York
March 27, 2009

*/s/ John H. Bae*

GREENBERG TRAURIG, LLP
John H. Bae
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
baej@gtlaw.com

CADWALADER, WICKERSHAM & TAFT LLP
Ingrid Bagby
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
ingrid.bagby@cwt.com

Co-counsel for Plaintiff, RSL Communications Plc